**07 C 7132**

**JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE COLE**

# EXHIBIT A

FAX (630) 393-6493

# MEMORANDUM OF AGREEMENT

THIS AGREEMENT made and entered into by and between _____ ACES ENVIRONMENTAL

30 W 218 Butterfield Road, Warrenville, IL  60555    (630) 393-6437
_____, its successors and assigns, hereinafter referred to as the "EMPLOYER", First Party, and LOCAL 150, INTERNATIONAL UNION OF OPERATING ENGINEERS, hereinafter referred to as the "UNION", Second Party.

THIS AGREEMENT is made in consideration of the instant promises of the First and Second Parties and the parties do hereby agree as follows:

1. The EMPLOYER recognizes the UNION as the sole and exclusive bargaining representative for and on behalf of the employees of the EMPLOYER within the territorial and occupational jurisdiction of the UNION. Prior to recognition, the EMPLOYER was presented and reviewed valid written evidence of the UNION's exclusive designation as bargaining representative by the majority of appropriate bargaining unit employees of EMPLOYER.

2. The Parties agree that the EMPLOYER is part of a single bargaining unit made up of all employers party to the Master Agreement adopted herein.

3. The Parties do hereby adopt the Master Agreement dated _____ June 1, 1995

entered into by and between the UNION and the _____ Mid America Regional Bargaining

_____ Association (Illinois Heavy & Highway & Underground) _____ and the parties do hereby mutually agree to be bound by the terms and conditions of that Master Agreement and the Agreement and Declaration of Trust of the Midwest Operating Engineers Pension Plan, Midwest Operating Engineers Welfare Plan, Local 150 I.U.O.E. Vacation Savings Plan and the Local 150 Apprenticeship Fund, and all amendments heretofore or hereafter made thereto, as though the same were fully incorporated herein. The Employer acknowledges that he has received a copy of the aforesaid Master Agreement, that he has reviewed same and that he is aware of the obligations arising thereunder.

4. This Agreement and the adoption of the Master Agreement and the Agreements and Declarations of

Trust referred to in paragraph 3 above, shall be effective as of _____ January 6, 2000

_____, and remain in effect to and including the expiration date of the Master Agreement adopted herein. This Agreement shall continue in effect from year to year thereafter and specifically adopt

any Master Agreement entered into between the Union and _____ the Mid America Regional Bargaining

_____ Association (Illinois Heavy & Highway & Underground) _____ subsequent to the expiration date of the Master Agreement herein adopted unless notice of termination or amendment is given in the manner provided herein.

5. Either Party desiring to amend or terminate this Memorandum of Agreement must notify the other in writing at least three (3) calendar months prior to the expiration of the Master Agreement adopted herein.

IN WITNESS WHEREOF, the Parties have executed this Memorandum of Agreement the

_____ 6 th _____ day of _ January _____ , 19__ 2000 .

| ACES ENVIRONMENTAL | LOCAL 150, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL-CIO |
|---|---|
| _____ | |
| Employer | |
| By _B. Coyne_ | By _____ |
| Bonnie Coyne | William E. Dugan |
| _President_ | _____ |
| Title | Steven M. Cisco |
| | _____ |
| | James F. Reda |
| | Below this line for office use only |

Form 150

OFFICE COPY

| | | |
|---|---|---|
| | **NO:** Fringe Benefits - Unincorporated Owner/Operator | |
| X | **YES:** Fringe Benefits - Bargaining Unit Employees | |
| | **YES:** Fringe Benefits - Employees Qualified Under 168 Hour Contribution Clause | Fr... |

**EXHIBIT B**

# HEAVY AND HIGHWAY AND UNDERGROUND

## AGREEMENT

### DISTRICTS 1 - 2 - 3



**EFFECTIVE JUNE 1, 2001
THROUGH MAY 31, 2007**

## MEETING SCHEDULE*

**CHICAGO - 4th Thursday**
6200 Joliet Road
Countryside, Illinois

**JOLIET - 3rd Thursday**
1050 N. I-55
and East Frontage Road

**LAKEMOOR - 2nd Thursday**
28874 Route 120

**ROCKFORD - 2nd Thursday**
4477 Linden Drive

**UTICA - 3rd Thursday**
740 East U.S. Route 6

**LAKEVILLE - 3rd Thursday**
1001 N. Michigan Street

**MERRILLVILLE - 2nd Thursday**
2193 West 84th Place

**ROCK ISLAND - 2nd Thursday**
3511 78th Avenue West

**No District Meetings
In Months of June and August**

**General Membership Meetings
January and July**

*Check 150 Engineer for Changes

## HEAVY AND HIGHWAY AND UNDERGROUND AGREEMENT DISTRICTS 1-2-3

Mid-America Regional Bargaining Association, Excavators, Inc. and Concrete Contractors of Will & Grundy County have negotiated separate Heavy and Highway and Underground Agreements for Districts 1-2-3 with Local 150.

## APPRENTICESHIP OFFICE

20959 W. Lockport Road, Plainfield, Illinois 60544
Telephone (815) 436-4150

## HEALTH, WELFARE, PENSION AND VACATION SAVINGS

[illegible], Countryside, Illinois 60525
(708) 482-[illegible]

[illegible], Ill, Wis., and Iowa -
(800) 323-3060

Members in Illinois - (800) 942-3082

## MIDWEST OPERATING ENGINEERS CREDIT UNION

6240 Joliet Road, Countryside, Illinois 60525
Telephone (708) 482-0845

# MARBA HEAVY HIGHWAY UNDERGROUND

## Table of Contents

| | | |
|---|---|---|
| Intent | | 1 |
| Purpose | | 1 |
| **Article I** | | |
| Section 1 | Bargaining Unit | 2 |
| Section 2 | New and Unlisted Equipment | 3 |
| Section 3 | Recognition | 4 |
| Section 4 | Subcontractor | 4 |
| Section 5 | Access to Premises | 5 |
| Section 6 | No Discrimination | 5 |
| Section 7 | Scope of Work | 5 |
| Section 8 | Pre-Job Conference | 6 |
| Section 9 | Prevailing Wage Scale | 7 |
| Section 10 | Successor / Employers | 7 |
| Section 11 | Assignment of Work | 8 |
| **Article II** | Union Shop | 9 |
| | Management Rights | 9 |
| **Article III** | | |
| Section 1 | Work Day and Work Week | 10 |
| | Lunch Period | 11 |
| | Call Off | 12 |
| Section 2 | Holidays | 14 |
| Section 3 | Overtime | 14 |
| Section 4A | Payday for Employees During the Show-Up Time Period | 14 |
| Section 4B | Payday for Employees Who Are Required to Work During Call Off | 15 |
| **Article IV** | Shift Work | 15 |
| **Article V** | | |
| Section 1 | Severance Pay | 16 |
| Section 2 | Wage Payment | 17 |



| Section 6 | Idle Time - Class I, Class II Class III | |
| | Equipment | 33 |
| | Class IV Equipment and Oilers | 34 |
| Article X | Duties of the Oiler | 34 |
| Article XI | | |
| Section 1 | Small Equipment | 34 |
| Section 2 | Small Category Equipment Assignment | 35 |
| Section 3 | Electric Submersible Pumps - Job Sites | |
| | or Projects | 36 |
| | Combination A & C | 38 |
| Section 4 | Combination D & B | 38 |
| | Electric Submersible Pumps - Tunnels, etc. | 39 |
| Article XII | Hiring | 39 |
| Article XIII | | |
| Section 1 | Grievances and Arbitration | 40 |
| Section 2 | Jurisdictional Award | 42 |
| Article XIV | Job Steward | 43 |
| Article XV | | |
| Section 1 | Wage Rates and Fringe Benefits | 44 |
| | Class I | 45 |
| | Class II | 51 |
| | Class III | 54 |
| | Class IV | 56 |
| | Class V | 57 |
| | Winter Maintenance Work | 58 |
| | Hazmat Pay | 58 |
| Section 2 | Fringe Benefits for First and Second Year | |
| | Apprentices | 59 |
| | Fringe Benefits for Third and Fourth Year | |
| | Apprentices | 59 |
| | Wages for Apprentices | 60 |

| Section 3 | Transportation and Parking | 17 |
| Section 4 | Duties of the Employer | 17 |
| Section 5 | Initial Job Termination | 19 |
| Article VI | | |
| Section 1 | Maintenance and Heavy Duty Repair | 19 |
| Section 2 | Loading and Unloading | 20 |
| Section 3 | Moving | 21 |
| Section 4 | Mechanics | 21 |
| Article VII | Craft Foreman | 22 |
| Article VIII | | |
| Section 1(a) | Preparing Equipment | 23 |
| Section 2 | Machinery Operation | 25 |
| Section 3 | Machine Reference Guide | 26 |
| Section 4 | Long Boom Pay | 27 |
| Section 5 | Capacity Pay | 27 |
| Section 6 | Augers and Drill Rigs | 27 |
| Section 7 | Creter Cranes | 27 |
| Section 8 | Truck Mounted Concrete Pumps and | |
| | Conveyors | 28 |
| Section 9 | Helicopters | 28 |
| Section 10 | Underground Work | 28 |
| Section 11 | Mining Machines - Boring Machines - | |
| | Micro Tunneling | 29 |
| Section 12 | Bobcats, Skidsteer Loaders, Forklifts | |
| | Serving Brick Masons and Drills | 30 |
| Section 13 | Tieback Machines | 31 |
| Section 14 | Asphalt Plants | 31 |
| Article IX | | |
| Section 1 | Discharge | 32 |
| Section 2 | Notice on Leaving Job | 32 |
| Section 3 | Regular Assigned Engineers | 32 |
| Section 4 | Changing From One Machine to Another | 32 |
| Section 5 | Skidsteers | 33 |

# MID-AMERICA REGIONAL BARGAINING ASSOCIATION HEAVY AND HIGHWAY AND UNDERGROUND CONSTRUCTION AGREEMENT

## JOINT AGREEMENT

THIS AGREEMENT, made and entered into this 1st day of June, 2001, by and between the Mid-America Regional Bargaining Association (MARBA), for and on behalf of the present and future members of its Member Associations, and the individual members thereof, individually and their successors and assigns, hereinafter for convenience, referred to as the "Employer," and the International Union of Operating Engineers, Local Union No. 150, AFL-CIO, hereinafter for convenience, referred to as the "Union".

## INTENT

The terms and conditions of this Agreement relating to the employment of employees have been arrived at by means of collective bargaining and the Agreement shall be deemed to be the Agreement of each of the Associations named above and shall be binding on all parties hereto and their respective members. For the purpose of mutual convenience and standardization, this Agreement has been negotiated by and between the Union and the Joint Negotiating Committee of Associations.

## PURPOSE

SUBJECT TO THE PROVISION OF THIS AGREEMENT, the purpose of this Agreement is to:

a) Enter into a definite labor-management contract covering the wages, hours, conditions of work and terms of employment in the relationship between Employer and employee.

1

Establishment of Joint Labor Management Committee for Certification, Training / Testing Data Base . . . . . . . . . . 61

Article XVI
Section 1    Welfare Fund . . . . . . . . . . . . . . . . . . . . . 62
             Family and Medical Leave Act (FMLA) . . . . . 65
Section 2    Pension Fund . . . . . . . . . . . . . . . . . . . . 65
Section 3    Vacation Fund . . . . . . . . . . . . . . . . . . . 70
Article XVII Apprenticeship and Skill Improvement Fund . . 72
Article XVIII Dues Check Off . . . . . . . . . . . . . . . . . . 74
Article XIX  Construction Industry Research and Service
             Trust Fund . . . . . . . . . . . . . . . . . . . . . . 75
Article XX
Section 1    Penalty for Failure to Pay Pension and/or
             Health and Welfare and/or Vacation
             Contributions and/or Dues Check Off . . . . . 77
Section 2    Penalty for Failure to Pay Wages . . . . . . . 78
Section 3    Bonding of Employer . . . . . . . . . . . . . . 78
Article XXI  Legitimate Picket Line . . . . . . . . . . . . . 78
Article XXII Contract Reopener . . . . . . . . . . . . . . . . 79
Article XXIII Savings Clause . . . . . . . . . . . . . . . . . . 80
Article XXIV Entire Agreement of the Parties . . . . . . . . 80
Article XXV  Effective Date . . . . . . . . . . . . . . . . . . . 82
             Illustrations and Definition of Piggybacking . . 82
             Memorandum of Clarification / Sewage Plants . . 83
             Letter Re: Competition Committee . . . . . . . 84
             Work Continuation Program . . . . . . . . . . . 85
             Letter of Understanding dated June 1, 1987 . . 86
             Labor Management Committee
             Trenching Machines . . . . . . . . . . . . . . . 87
             Letter of Understanding dated June 1, 2001 . . 88
             Arbitration Award . . . . . . . . . . . . . . . . . 89
             Uniform Drug / Alcohol Abuse Program . . . . .

b) Describe the respective rights and responsibilities of the Employer and the Union.

c) Prevent strikes, lockouts, and stoppages of work on account of controversy or jurisdictional disputes by requiring prior arbitration procedure.

d) Promote the efficiency and productivity of the construction industry.

e) Protect the economic and employment welfare of the employees.

f) Comply at all times with State and Federal Law governing labor-management relations.

g) Provide the principle of Union Security.

h) Preserve to the Employer the basic and intrinsic rights of management to decide and conduct its own operation in a competitive free enterprise system.

i) Improve the local, state and national economy by quality performance.

j) Observe and protect the public interest.

## ARTICLE I

## SECTION 1 - BARGAINING UNIT

The bargaining unit shall consist of all employees engaged in work covered by the occupational jurisdiction of the Union with reference to any and all of the classifications described in Article I, Section 7, "SCOPE OF WORK", wages, hours of work and all other terms and conditions of employment set forth in this Agreement and the operation, maintenance, repair, moving, dismantling and assembly of all machines used on work coming within the occupational jurisdiction of the Union regardless of motive power, and/or mode of control.

The bargaining unit shall also include, for the purposes of Article XVI, Sections 1 and 2, and for such purposes only, such persons in the employ of an Employer herein referred to as "Supervisors", defined in the LMRA, as amended, as follows:

...have authority, in the interest of an Employer, to hire, transfer, suspend, lay-off, recall, promote, discharge, assign, reward, or discipline, other employees, and who have responsibility to direct them or adjust their grievances, or effectively recommend such action, if in connection with the foregoing, the exercise of such authority is not merely of a routine or clerical nature, but requires the use of judgment,

and, provided, further, that such Supervisor:

(a) has heretofore been included as a member of the "bargaining unit" as that term is defined in the preceding paragraph of this Article I, Section 1, or as defined in any previous collective bargaining agreement entered into between the parties hereto, and

(b) was an employee on whose behalf five (5) years prior to the effective date of this Agreement contributions were required to be made for at least 5,000 of hours worked, or wages received, as the case then required.

## SECTION 2 - NEW AND UNLISTED EQUIPMENT

It is mutually agreed between the Union and the Association to meet and discuss on wage rates and manning requirements for all new and unlisted equipment which is not listed in this Agreement, but that the Union claims under the jurisdiction of International Union of Operating Engineers. Upon written notification of the Association and the contractor by the Union, the parties shall meet to discuss all such matters within twenty-one (21) days from the date of notification. If the parties are unable to resolve such matters, the matter may be submitted within thirty (30) days to a neutral arbitrator. If the Union and the Association and/

or Employer cannot agree on an arbitrator, then an arbitrator shall be selected in accordance with the rules and procedures of the American Arbitration Association and the arbitration shall be conducted under and in accordance with such rules and procedures. The cost of such arbitration shall be borne equally by both parties to the arbitration, and the decision of the arbitrator shall be final and binding on all parties and individuals bound by this Agreement. The time limits provided in this Section may be extended by mutual written consent.

## SECTION 3 - RECOGNITION

The Associations and the Employers recognize the Union as the sole and exclusive bargaining agent for all employees employed in work covered by the occupational jurisdiction of the Union by Employers who are now members of the Associations and who have assigned their bargaining rights to the Associations, or such Employers as may hereafter become members of the Associations and who assign their bargaining rights to the Associations, or Employers signatory to this Agreement. The Union recognizes the Associations as the sole and exclusive bargaining agent for its members on whose behalf they have bargaining authority and for such other firms, persons or corporations as may hereafter become members of the Association and who assign their bargaining rights to the Associations. The Associations shall keep the Union advised in writing within fourteen (14) days of changes to the list of members who have assigned the Associations their bargaining rights. All other contractor Employers engaged in work covered by classifications in this Agreement and the occupational jurisdiction of the Union shall be subject to the terms of this Agreement.

## SECTION 4 - SUBCONTRACTOR

The Employer agrees that he will not contract or subcontract any work covered by the Scope of Work of this

4

Agreement and/or work coming under the occupational jurisdiction of the Union to be done at the site of construction, alteration, painting, or repair of a building, structure, or other work, except to a person, firm or corporation, party to the applicable current labor agreement with the Union.

## SECTION 5 - ACCESS TO PREMISES

The duly authorized representative of the Union shall be allowed access to any job site or premises. If access is denied, the Union shall request an expedited grievance procedure by fax or other written communication within forty-eight (48) hours with a fine of Ten Thousand Dollars ($10,000.00) per week. For this purpose it will be the duty of the Employer to provide adequate passes, as requested by the Union, provided the Employer is able to do so.

## SECTION 6 - NO DISCRIMINATION

It is understood and agreed that the Employer shall not discriminate against any member of the Union, any of its officers, its stewards, or any member serving as a member of a committee authorized by the Union. In the application of provisions of this Agreement, there shall be no discrimination by the Employer or the Union against any individual because of such individual's race, color, religion, sex, or national origin, and when the words in the masculine are used herein it shall include the feminine.

## SECTION 7 - SCOPE OF WORK

This Agreement shall apply to work classifications and operations incidental thereto as are herein generally and specifically described:

1*excavating of all types, paving of all types, bridges, culverts, roads, streets, airport runways, ramps grading, resurfacing, grade separations, overpasses, underpasses, curbs, gutters, sidewalks, parking areas, skyways, caissons-

1*See letter of clarification regarding sewage disposal plants.

5

sons, and all other highway construction work, underground and utility work of all types, sewers, subways, tunnels, water mains, piping, pipe jacking, headwalls, outfall structures, junction chambers, concrete construction, conduits, drainage, sheeting, dewatering, pile driving and all other underground utility work, heavy construction work of all types, dams, cofferdams, dock walls, shore protection and all land-based operations involving lakes, harbors, and river improvements; snow removal, flood controls, civil defense, fire and catastrophic operations of all types, landscaping, black dirt and black dirt fields, and wrecking of all types, dismantling or demolition of any building structure, railroad spurs from main line to building line, all farm and land improvements and all assembly and disassembly of all equipment on the job site coming under the jurisdiction of the operating engineers.

In the application of this section, the aforementioned classifications of work and operations shall not be interpreted to include the following:

Construction, erection, modification, addition to or improvement of a building structure or structures, the construction, erection, modification, addition to or improvement of an industrial plant or commercial construction and the driving of sheeting, piling, caisson work, foundation work or dewatering for a building structure, rapid transit stations, pumping station structures above connecting sewer lines, and slurry operations within the outer perimeter of the building line. When a member of the bargaining unit is working within the Scope of this Agreement and is required to work within the scope of another agreement the same day, the conditions and wages in the contract most beneficial to the employee shall prevail.

## SECTION 8 - PRE-JOB/JOB CONFERENCE

If the Union or Employer elects, a pre-job/job conference shall be held prior to the commencement of work. At

the pre-job/job conference, the Employer shall advise the Union of its requirements as to the workmen required in the respective classifications, the probable starting date, duration of the job, and the machines to be used.

Either party may after a job is in progress, if it deems necessary, request a job conference. The pre-job/job conference must be held within five (5) days from the date of request.

Union has the option to strike if an Employer refuses a written request to attend a pre-job/job conference provided that at least forty-eight (48) hours advance written notice of the Union's intent to strike is given to the Employer.

## SECTION 9 - PREVAILING WAGE SCALE

There is set forth in this Agreement in Article XV, a wage scale applicable to work performed in Cook, DuPage, Will, Kendall, Grundy, Kane, Kankakee, Lake and McHenry Counties, all in Illinois, and in Article XV, the applicable wage scales for apprentices in all counties listed above. Such wage scales shall be applicable to contractor, individual, partnership or corporation signatory hereto and their employees engaged in all types of private works and in public works for the state, county, city, United States, or any other public body or any other political or departmental subdivision hereof.

## SECTION 10 - SUCCESSOR/EMPLOYERS

A. SUCCESSOR/EMPLOYERS: This Agreement, when executed by the parties hereto, shall be binding upon the Union and Employer, their successor, heirs, executors, administrators, receivers in bankruptcy, receivers in equity, trustees or any such other equivalent designee.

B. NOTICE TO THE UNION: Employer shall give notice to the Union and the appropriate Fund Office in

Construction Trades Department A.F.L.-C.I.O. shall be processed through the Grievance Procedure in Article XIII of this Agreement and shall not be considered to be a jurisdictional dispute and thereby excluded from the Grievance Procedure.

d) The Employer agrees to compensate the bargaining unit member who would have worked but for the Employer's violation of this Section at the double (2x) time rate for all hours the bargaining unit member would have worked but for the Employer's violation.

## ARTICLE II

### A. UNION SHOP

All employees shall be obligated to become members of the Union after the seventh (7th) day of employment as a condition of continued employment. Any employee who fails to become a member of the Union by his own choice and not by refusal of the Union, or who fails to maintain his Union membership shall forfeit his right of employment.

The Union by written notice served by registered mail upon the Employer may demand the discharge of said employee, specifically stating the basis of said demand, and subject at all times to the Union guarantee to defend, save harmless and indemnify the Employer from any claims or damages accruing to the employee as a result of the wrongful discharge demand by the Union. The foregoing in all other aspects shall be subject to existing and applicable Federal and State laws governing labor management relations. This Union security provision shall be subject to immediate negotiation with the Employer as to any further changes permissible under future legal authority.

### B. MANAGEMENT RIGHTS

The right to manage and conduct the business, including the right to determine what operations are to be con-

9

---

writing not later than ten (10) days after the occurrence of any of the events relating to the Employer, occurring after the date hereof:

1. Sale, assignment, transfer, or other change in name or ownership;

Formation of partnerships; Termination of business;

Using a firm name commonly used in business operations;

Change in form of business organization;

6. Incorporation of business;

7. Dissolution of corporation;

8. Name and business organization of successor;

9. Admission to or withdrawal from any association operating as a multi-employer bargaining agent.

## SECTION 11 - ASSIGNMENT OF WORK

a) The Employer hereby agrees to assign ALL work that is to be performed in the categories described in Article I, Section 7, Article VIII, Article XI, and/or Article XV to employees in the bargaining unit covered by this Agreement.

b) The Employer, by entering into this Agreement, hereby states and affirms that it is the Employer's preference to have ALL work identified or described in Article I, Section 7, Article VIII, Article XI, and/or Article XV be performed by employees in the bargaining unit represented by the Union covered by this Agreement.

c) Grievances alleging a violation of this Section, based upon assignment of work to employees and/or labor organizations not affiliated with the Building and

8

ducted the methods and means of all operations, to introduce new, improved or changed methods, equipment or facilities, to determine the machinery and equipment to be utilized, the right to hire, promote, manage and direct the work force, to schedule the days, hours and shifts of operation, to determine when overtime shall be worked, to layoff and recall employees, to curtail or close down any operation, to sell and dispose of all or any part of the Employer's assets, and to contract or subcontract work, except as specifically limited by this Agreement, are reserved solely to the Employer.

## ARTICLE III

## SECTION 1 - WORK DAY AND WORK WEEK

(A) The regular starting time for a single shift operation Sunday through Saturday inclusive shall be scheduled at one of the following hours: 6:00 a.m., 6:30 a.m., 7:00 a.m., 7:30 a.m., or 8:00 a.m.

The Employer must establish a regular starting time, then if the Employer desires to change the established starting time, the employee(s) must be notified before the quitting time of the employee's regular workday of any change in the established starting time for the following day.

(B) Eight (8) hours shall constitute a normal workday between the hours of 6:00 a.m. and 2:30 p.m., 6:30 a.m. and 3:00 p.m., 7:00 a.m. and 3:30 p.m., 7:30 a.m. and 4:00 p.m., 8:00 a.m. and 4:30 p.m., as the case may be pursuant to the established starting time as set forth in Section 1(A) of this Article.

The provisions set forth in Section 1A and B of this Article shall not apply if there is a governmental agency requiring a different starting time, in which event such requirement shall be the controlling factor. In no event

10

shall such governmental requirement be interpreted to apply the remainder of this Agreement.

(C) LUNCH PERIOD - There shall be a regularly scheduled lunch period for all one, two and three shift operations. The lunch period shall be one-half (½) hour beginning at the midpoint of the shift(s) or 12:00 noon for a single shift operation. The Employer must establish a regular schedule lunch period at either the midpoint or 12:00 noon and it shall be for a minimum of one (1) week duration beginning on a Monday and the employees must be notified before quitting time of the employees last day of work prior to the Monday of the change in the established lunch period. On a three shift operation, the employees on all three shifts will work seven and one-half (7½) hours and be paid for eight (8) hours with a half (½) hour lunch period at the time specified above. On a two shift operation, the employees on both shifts will work seven and one-half (7½) hours and be paid for eight (8) hours with a half (½) hour lunch period at the time specified above. On a two shift operation where the employees are working more than eight (8) hours, both shifts shall receive a half (½) hour lunch period, and it shall be taken at the midpoint of the shift, for which the employee shall be paid.

If the Employer requires the employee to work during his scheduled lunch period on a multiple shift operation, the employee shall be paid as provided above and in addition shall receive one-half (½) hour at the overtime rate for working during his lunch period.

On a single shift operation if the Employer requires the employee to work during his scheduled lunch period, he shall be paid time and one-half (1½) for the lunch period in addition to his normal day's pay.

11

The above lunch period provision shall also apply to Sundays and holidays, except it shall be paid at the double time (2) rate.

(D) CALL OFF - All employees shall be obligated to report for work each day Monday through Friday at the designated starting time as set forth in this Article; however, employees may be notified up until 10:00 p.m. of the previous day for a single shift operation or within six (6) hours after the end of the employee's shift on a multiple shift operation by an authorized representative of the Employer, if there is no work the following day. Otherwise the employee shall report for work and be paid pursuant to the terms of this Article. Employees personally notified on the job before quitting time the previous day or by telephone shall be the only valid means of notification of not reporting for work. The employee shall remain at the job site if so directed by the Employer or his representative. In the event the employee is held more than two (2) hours or is started to work at any time he shall receive a minimum of eight (8) hours pay and shall be paid pursuant to the following for all shifts Sunday through Saturday.

1. An employee who reports to work and is informed prior to the starting time of his regular shift, 6:00 a.m., 6:30 a.m., 7:00 a.m., 7:30 a.m. and 8:00 a.m., respectively, that he will not work that day shall receive two (2) hours pay.

2. An employee who reports for work and is informed prior to preparation time (½ hour prior to this established starting time) that he will not work that day and is released before two (2) hours have elapsed beginning with the starting time of his preparation time and has not started to work, shall receive two (2) hours pay.

3. An employee who reports to work and commences preparing his machine and is informed prior to his regular

starting time that he may not work that day and is released before two and one-half (2½) hours have elapsed beginning at the starting time of his preparation time and is not started to work shall receive one-half (½) hour at the overtime rate of pay for preparation time and two (2) hours pay for show-up time.

4. An employee who is requested to report for work prior to 6:00 a.m. on a single shift operation or 8:00 a.m., 4:00 p.m., or 12:00 midnight on a two or three shift operation and prior to the requested starting time is informed that he will not work that day shall receive pay at the overtime rate for the hours prior to the starting times listed in this paragraph and two (2) hours pay for show-up time.

5. An employee who is requested to report for work prior to 6:00 a.m. on a single shift operation or 8:00 a.m., 4:00 p.m., or 12:00 midnight on a two or three shift operation and held on the job more than two (2) hours after the regular starting time or has started to work at any time after the requested starting time shall receive pay at the overtime rate for the hours prior to the starting times listed within this paragraph and for eight (8) hour's pay for the normal work day.

6. An employee held on the job more than two (2) hours or is started to work at any time after the employee's regular starting time shall receive a minimum of eight (8) hours pay plus one-half (½) hour preparation time when applicable. An employee who is requested to report or who is called out after 8:00 a.m., 4:00 p.m., or 12:00 midnight, respectively, and paid back to 8:00 a.m., 4:00 p.m. or 12:00 midnight, respectively, plus one-half (½) hour preparation time when applicable, and such hours shall be counted as hours worked in computing overtime.

The above provisions shall be applicable to all single and multiple shifts under the terms of this Agreement.

When . employee is requested to report for work on Saturdays, Sundays, or holidays, he shall be paid pursuant to the provisions set forth in this Article, except he shall be paid at the applicable overtime rate of pay.

## SECTION 2 - HOLIDAYS

The following holidays are designated as those for which double (2) time shall be paid together with Sundays: NEW YEAR'S DAY, DECORATION DAY, FOURTH OF JULY, LABOR DAY, THANKSGIVING DAY AND CHRISTMAS DAY. A holiday falling on Sunday shall be celebrated on Monday. If a holiday falls on a day other than a Sunday, it shall be celebrated on that date. No work shall be done on Labor Day, except to save life or property.

## SECTION 3 - OVERTIME

All time in excess of eight (8) hours per day and/or forty (40) hours per week and before or after the normal workday and Saturdays shall be paid at the time and one-half (1½) rate of pay.

All holidays shall be considered as time worked irrespective of whether the employee performs work or not in determining overtime payment.

All overtime shall be paid to the next half (½) hour.

All hours for which the employee receives wages shall be counted as hours worked in computing overtime.

## SECTION 4A - PAYDAY FOR EMPLOYEES DURING THE SHOW-UP TIME PERIOD

Any employee who reports for work on a pay day and is told that there is not work that day shall receive his normal show-up time as long as his paycheck is available to him at his normal place of work during his second hour of his starting time. If an employee is required to wait more than two (2) hours for his paycheck, he shall receive an addi-

14

tional hour's pay for each hour or part of an hour the employee is required to wait for a check.

## SECTION 4B - PAYDAY FOR EMPLOYEES WHO ARE NOT REQUIRED TO WORK DURING CALL OFF

When the Employer notifies the employee(s) that there will be no work and such day is the regular pay day, the employee(s) check shall be made available to him at his regular place of work no later than the end of the second hour from his regular starting time. The employee(s) shall be compensated two (2) hours at the regular rate of pay for picking up his check plus for each hour or part of an hour beyond the two (2) hour period, he shall receive an additional one (1) hour's pay.

## ARTICLE IV

## SHIFT WORK

When shift work is established and work is carried on with three shifts of men working eight (8) hours each, the starting time shall be 8:00 a.m. for the day shift, 4:00 p.m. for the afternoon shift, and 12:00 midnight for the night shift, then only single time shall be paid during weekdays, except as provided in this Article. Rotation of multiple shifts may be established at a job conference.

Employees working on the afternoon shift shall receive an additional Fifty Cents ($0.50) effective June 1, 2001, Sixty-Five Cents ($0.65) effective June 1, 2003, and Seventy-Five Cents ($0.75) effective June 1, 2006 per hour over the regular rate of pay. Employees working on the night shift shall receive an additional Seventy-Five Cents ($0.75) effective June 1, 2001, Ninety Cents ($0.90) effective June 1, 2003, and One Dollar and no Cents ($1.00) effective June 1, 2006 per hour over the regular rate of pay.

15

When two or three shifts are utilized and the Employer wishes the starting time advanced, a representative of the Union and a representative of the Employer shall meet and agree to the starting time for both shifts.

Where shift work is performed from 12:01 a.m. Saturday to 12:00 midnight Saturday, each shift shall be paid at the rate of time and one-half (1½).

Where shift work is performed from 12:01 a.m. Sunday to 12:00 midnight Sunday, each shift shall be paid at the rate of double (2) time.

All provisions in Article III pertaining to work week, show-up time and workday, preparation time, overtime, holidays, and pay day shall apply to all one, two, and three shift operations.

An employee who has started to work and goes into overtime or works into another shift shall receive overtime until such individual has been released from work (see regular assigned engineer clause).

## ARTICLE V

### SECTION 1 - SEVERANCE PAY

When the services of an employee are no longer required, he shall receive a full day's pay for the day he is terminated and receive all of his wages before his quitting time or by Certified Mail postmarked within twenty-four (24) hours after his quitting time. If not paid within said twenty-four (24) hours, the Employer shall pay penalty of four (4) hours of pay to such employee at the straight time rate of pay for each succeeding twenty-four (24) hours of delay. It is understood that said twenty-four (24) hour periods shall not include Sundays or holidays. Employees shall not be called at home and terminated.

### SECTION 2 - WAGE PAYMENT

Wages shall be payable in United States currency or checks at the option of the Employer, or by Direct Deposit at the option of the employee, and in no event shall the Employer withhold for more than five (5) days, wages accruing prior to the pay day. At the time of payment of wages, the Employer shall furnish the following information on the check stub or accompanying slip to each employee: regular hours worked and overtime hours worked and all deductions including contributions to the Vacation Fund shall be listed separately.

Payday shall be once each week on a specified day during work hours except when payday falls on a Thursday or Friday and such day or the day after is a holiday the employees must be paid prior to the holiday in question. If an employee is not paid on the regular assigned pay day the Employer shall pay penalty of four (4) hours a day to such employee at the straight time rate of pay for each succeeding twenty-four (24) hours of delay. It is understood that said twenty-four (24) hour periods shall not include Sundays and holidays.

### SECTION 3 - TRANSPORTATION AND PARKING

Whenever employees of the bargaining unit are employed on a job site or project where they cannot supply their own transportation to the work area to which they are assigned, the Employer shall furnish transportation from the gate or entrance or an adequate parking lot provided for by the Employer to their place of employment. All shifts shall start and end at a specified gate, entrance or parking lot for all employees for whom such transportation is furnished.

### SECTION 4 - DUTIES OF THE EMPLOYER

It shall be the duty of the Employer to:

## SECTION 5 - INSURANCE, SAFETY, SANITATION

The Employer must make adequate provision to comply with all the rules and laws pertaining to Insurance, Safety and Sanitation as are established by the statutes of the Federal, State and Municipal governments where the work is in progress.

## ARTICLE VI

## SECTION 1 - MAINTENANCE AND HEAVY DUTY REPAIR

When the Employer is performing work covered by this Agreement and such Employer maintains a maintenance and repair shop, or shops, or does repair and equipment maintenance in the field, all employment and applications for employment to perform such work shall be in accordance with the terms and provisions of this Agreement. The Employer shall have the right to have specialized field and shop repair performed by service representatives of manufacturers or equipment dealers who provide such service.

1. Employees shall keep their equipment in good order and good repair at all times, and shall assist in field repair of same. In the event of a breakdown of the equipment, the engineer and oiler, if one is assigned to the equipment, can be re-assigned while it is being repaired only when members of the bargaining unit are assigned to perform the repair work.

2. If any repair work is to be performed by anyone other than a member of the bargaining unit, the operator and/or oiler shall assist said non-bargaining unit member with the repair, and shall remain with his assigned machine until all repair work is completed.

3. Unassigned machines shall come under the terms and conditions of number 2 above.

19

1. ...nish to the employees a sufficient amount of fresh drinking water at the beginning of each shift at the job site and again during the lunch period. Provide an adequate change-house (for operating engineers) and sanitary toilets at the job site.

2. Provide adequate heated showers for (operating engineers) at the job site on all tunnel jobs.

3. Provide an adequate amount of water to keep the dust down.

4. Maintain proper ventilation in all working areas pursuant to Section 5 of this Article.

5. Provide suitable shelter to protect employees from falling materials and inclement weather, such as hard hats, raingear, summer and/or winter fans and heat housers.

6. Carry Workmen's Compensation insurance in a Company or Association authorized under applicable state laws and regulations to insure the liability to pay compensation under Workmen's Compensation Laws.

7. Make all contributions required under the Illinois Unemployment Compensation Act. When an Employer shall not be subject to the provisions of such Act because of the number of employees in the employing unit, he shall, nevertheless, pursuant to the provisions of said Act, make election to be subject thereto.

8. Pay for specialized training as required by individual owners or government agencies to include all tuition, fees, books and other expenses as well as the wages for time spent in direct training (i.e. HAZMAT or specialized safety training), CDL and recertifications are not included.

Upon forty-eight (48) hours written notice, the Union shall have the option to strike any Employer who does not comply with numbers 6 and 7 above.

18

4. A...bing or any other servicing of equipment in the field will only be performed by members of the bargaining unit, including all Grease Trucks or other means of servicing equipment. When it has been traditionally and historically assigned by the Employer, lubing and any other servicing of equipment in the shop may be performed by a non-bargaining unit member.

On days when operators and oilers are called off or when repair work goes into overtime on a weekday, Saturday, Sunday or holiday, only a bargaining unit mechanic may perform the repairs with no assistance. If another person is needed to assist, it shall be a member of the bargaining unit.

When warranty work is performed on new equipment, the operator and/or oiler may be reassigned.

The length of time warranty work can be performed by factory service representatives shall be limited to the original factory warranty period.

## SECTION 2 – LOADING AND UNLOADING

The loading and unloading of all power driven self-propelled equipment listed in the wage classifications of this Agreement when being moved by means of low-boy trailers rail or water on the job site, from job site to job site, yard or shop to job site, etc., shall be deemed the work of the operating engineers and shall be covered by the terms of this Agreement. The Employer may at his discretion assign the employee(s) to act as an escort while such equipment is in transit.

The loading and unloading of unassigned equipment discussed in this Section may be done by an employee(s) assigned to another piece of equipment and shall not be considered a violation of Article IX, Section 4, provided, however, such operation does not violate Article IX, Section 6, the Idle Time provision.

20

## SECTION 3 – MOVING

The moving of all power driven self-propelled equipment listed in the wage classifications of this Agreement when moved under its own power on the job site, from job site to job site, from yard or shop to job site, etc. shall be deemed the work of the operating engineer and shall be covered by the terms of this Agreement. Employees shall receive wages for such travel time until they are returned to the place of origin or their personal transportation, whichever is closer.

If the Employer designates a reporting point other than the job site, employees shall be paid at their applicable rate for time spent going from the reporting point to the job site and if necessary, for returning to the designated reporting point.

## SECTION 4 – MECHANICS

Mechanics shall furnish their own tools but shall not be required to furnish special tools such as: Pin Presses, Spanner Wrenches, Air or Electric Wrenches, Gear and Bearing Pullers, Electric Drills, Reamers, Taps and Dies, Oxyacetylene Hoses, Gauges, Torches and Tips, Twenty-Four Inch (24") Pipe Wrenches, over ¾ Inch Drive Socket Set, Sockets over Two Inches (2"). If by mutual agreement, the mechanic is to use his personal pick-up or similar vehicle for the transporting of his tools, etc, on the job, or from job to job, he shall be compensated at not less than Six Hundred Twenty-Five Dollars ($625.00) per month plus all fuels, oil, and any additional insurance rider for said vehicle. In no event shall the furnishing of said vehicle be deemed as a condition of employment. Payment for vehicle rental shall be monthly except, in case of a lay-off, then it shall be as set forth in Article V, Section 1.

The Employer agrees to pay for or replace with equal quality any tools, (excluding hand tools guaranteed for life

21

by the manufacturer), broken on the job by mechanics or anyone required to furnish their own tools. The Employer shall maintain an insurance policy or assume the cost risk, for loss of the employee's personal tools, or portion thereof, on Company premises, or job site and while in the Company's utility truck, when due to the theft by break-in and entry, including fire and explosions or other circumstances that may happen on the Company premises, or job site, and/or Company's utility truck. The Employer's liability for such loss shall not exceed the actual cost of the tools. It is understood that all employees must furnish the Employer with a complete inventory of the personal tools and their brand. It is further understood that whenever new tools are purchased, the employee must include them on the inventory list previously furnished, and whenever tools are removed, the inventory shall be reduced. If an employee does not supply the Employer with an inventory of tools, responsibility for replacement will not be that of the Employer. All replacement costs shall be paid within thirty (30) days of a reported loss. Employees must notify the Employer of a loss covered by this provision within three (3) days of knowledge of loss.

## ARTICLE VII
## CRAFT FOREMAN

A Craft Foreman shall be employed by the Employer where fifteen (15) or more employees in the bargaining unit are employed. Craft Foremen are employed for their knowledge in the repair and maintenance of various machines used in the construction industry, and shall also work with the tools of the trade relating to the repair and maintenance of all machines coming within the jurisdiction of the bargaining unit. They shall also have a working knowledge of the qualification of the employees working for their Employer. The Craft Foreman will be the lead man

of the employees in the bargaining unit. Such individual, however, shall neither have the authority to, nor shall he exercise any of the functions customarily exercised by supervisor within the meaning of the National Labor Relations Act, as amended. In no way shall such individual be deemed to be an agent of the Union.

The Craft Foreman shall be responsible for the general supervision of all members of the bargaining unit. He shall regularly supervise the maintenance performed on all equipment to insure that proper servicing is accomplished daily. He shall maintain records (supplied by the Employer) indicating that regular preventative maintenance has been accomplished.

The Craft Foreman will be responsible for maintaining a supply of oil and grease, cables and other spare parts and equipment essential for regular operation when such material is made available to him by the Employer or when given the necessary purchasing power to do so by the Employer. The Craft Foreman will be designated by mutual agreement between the Union and the Employer, except when an employee has been in the continuous service of the Employer (including affiliated companies, joint ventures and predecessors or successors of the Employer) for a minimum of ten (10) years.

## ARTICLE VIII
## SECTION 1 – (A) PREPARING EQUIPMENT

Engineers on all cranes up to one cubic yard capacity and engineers operating all derricks and²* all hoists listed in Class I of Article XV hereof, and engineers on cranes of 20 ton lifting capacity or under, shall start one-half (½) hour before the regular starting time including shift work

²* Single drum hoist of motive power less than six horsepower will not require preparation time.

erator used and also an additional engineer shall be used if the conveyor system is set up in sections on different levels and is not one continuous set of conveyors.

# SECTION 2 - MACHINERY OPERATION

All Power Shovels, Backhoes, Backhoes, Draglines, Clamshells and Cranes used in work covered by this Agreement where such machinery is rated by the manufacturer as having a capacity of one cubic (1) yard or over, or over twenty (20) ton lifting capacity, Autograde, 3*Formless Curb and Gutter Machine 36 inches in width and over, Roto Mill Grinder 36 inches in width and over, Slip-Form Paver, Concrete Paver 27E and over, Central Mix Plants, Asphalt Plants, Batch Plants and Trenching machine 30 inches and over, shall require an engineer and oiler (Apprentice), regardless of motive power.

All Lattice Boom Cranes originally manufactured after 1990 shall require an Engineer and an Oiler or Apprentice.

All Lattice Boom Cranes originally manufactured prior to 1990 with an original lifting capacity of under 20 tons, shall require an Engineer, but shall not require an Oiler or Apprentice.

All Lattice Boom Cranes 20 tons and under shall manufactured prior to 1990, the Engineer shall receive one-half (½) hour grease time.

If another person is required on any of the above cranes, he shall be a member of the bargaining unit.

Hydraulic machine other than Front Endloaders that are designed to use bucket attachments of various sizes and the manufacturer rates such machine as weighing over one hundred fifteen thousand (115,000) pounds shall

3* See letter of intent dated May 6, 1976.

to prepare the machine for its operation by oiling, greasing, maintaining and servicing the equipment and shall be paid for said one-half (½) hour at the overtime rate.

Combination Backhoe Front Endloader machine with backhoe bucket capacity of less than one (1) cubic yard shall not be subject to preparation time. Combination Backhoe Front Endloader machine with backhoe bucket capacity of one (1) cubic yard or more shall be subject to preparation time. All Hydraulic Cherry Picker type machines under twelve (12) ton lifting capacity shall not be subject to preparation time. All Hydraulic Cherry Picker type machines of twelve (12) ton lifting capacity to a gross vehicle weight up to ninety-one thousand (91,000) pounds shall be subject to preparation time. All Hydraulic Cherry Picker type machines of over ninety-one thousand (91,000) pounds gross vehicle weight shall require an engineer and oiler and/or apprentice as the case may be. All Tieback machines less than 60,000 pounds capacity shall be subject to preparation time.

In the event a dispute arises over the applicability of preparation time, or oiler (Apprentice) requirements, due to the introduction of new models of machines or due to the manufacturer's or Employer's de-rating or re-classification of any machine's size, lifting capacity, bucket capacity, or weight, a committee comprised of an equal number of representatives of the Union and the Association signatory hereto shall meet to make an equitable decision of the machine in question. In the event a majority decision cannot be reached, the dispute shall be processed pursuant to the Grievance and Arbitration article of this Agreement.

(B) Engineers on concrete conveyor systems will be present and assist when the conveyor system is being set up or dismantled, operated or moved. The engineer will also maintain the generator running the system. An additional engineer shall be required for each additional gen-

require oiler. Machines that do not require an oiler pursuant to the above shall be subject to preparation time pursuant to Section I (A) of this Article, with the exception of Combination Backhoe Front Endloader machine.

In the event machines of a new make, model, design, weight or capacity become available and a dispute arises in regard to the application of the foregoing, a committee comprised of an equal number of representatives of the Union and the Association signatory herein shall meet and based on available information and the manufacturers specifications issue a majority decision.

In the event a majority decision cannot be reached, the dispute shall be processed pursuant to the Grievance and Arbitration Article of this Agreement.

Non-Lattice Boom Truck Cranes having three (3) axles or less shall not require an oiler. All Non-Lattice Boom Truck Cranes having four (4) axles or more, including dolly (dolly shall count as an axle) shall require an engineer and oiler except as heretofore limited.

On any machine not requiring an oiler when a second man is used, such man shall be an employee of the bargaining unit.

## SECTION 3 - MACHINE REFERENCE GUIDE

"Lifting capacity, capacity in cubic yards, manufacturers rating in pounds", and similar references to size, weight bucket capacity or performance of a machine or piece of equipment shall be determined by reference to Dataquest Green Guide. Such reference guide and the information contained therein with regard to the standard configuration of a specific piece of equipment or machinery shall be utilized, notwithstanding any modifications or alteration to the machine or piece of equipment.

26

## SECTION 4 - LONG BOOM PAY

All engineers operating cranes and derricks of all types with booms of ninety feet (90') to one hundred fifty (150') feet, including jib, shall be compensated an additional Fifty Cents ($.50) per hour over and above the regular wage scale for operating such crane. All engineers operating cranes and derricks with booms of more than 150 feet including jib, shall be compensated the aforementioned Fifty Cents ($.50) plus an additional ten cents ($.10) per hour over and above the regular wage scale for operating such crane for each additional ten feet (10') of boom or jib.

## SECTION 5 - CAPACITY PAY

All engineers operating cranes and derricks with a manufacturers rated maximum capacity exceeding 50 ton shall be compensated Two Cents ($0.02) per hour for each ton of the rated capacity in excess of 50 ton. Long Boom Pay Section 4 and Capacity Pay Section 5 and Premium Pay as provided for in Section 6 of this Article shall not be pyramided, but the highest rate shall prevail.

## SECTION 6 - AUGERS AND DRILL RIGS

All engineers operating crane mounted earth augers, raised blind hole drills, and truck mounted drill rigs shall be compensated an additional Fifty Cents ($.50) per hour over and above the regular wage scale for operating such equipment.

## SECTION 7 - CRETER CRANES

Concrete conveyors mounted on rough terrain cranes (creter cranes) 18 ton and over shall require an engineer and oiler, less than 18 ton the engineer shall receive preparation time. When the creter crane is equipped with a conveyor system capable of extending seventy (70) feet or more, the engineer shall receive an additional Fifty Cents

27

(B) All shifts shall start and end above ground, or employees engaged in work described in this Section shall be paid an additional one-half (½) hour pay as travel pay at the overtime rate from 0 to 10,500 ft., one (1) hour travel pay for over 10,500 ft. to 21,000 ft., one and one-half (1½) hours travel pay for over 21,000 ft. to 31,500 ft. Travel distance shall be measured from point of entry of the employee. Employees must report before their normal starting time as required by the travel time listed herein. At the end of the shift, employees must be out of the shaft at the normal quitting time or be paid overtime pursuant to the terms of this Agreement unless reason for not being out of the shaft is an act or fault of the employee.

## SECTION 11 - MINING MACHINES - BORING MACHINES – MICRO TUNNELING

A. The crew operating and maintaining the mining machines shall be compensated an additional Fifty Cents ($.50) per hour over and above the regular wage scale for operating and maintaining such machine. For hard rock tunnels 12 feet in diameter and over, the crew shall consist of one operator, one oiler, and one heading mechanic, who shall perform maintenance on any equipment in the tunnel heading, under 12 feet in diameter, one operator and one oiler. Tunnels other than hard rock under five feet in diameter, one (1) operator, five feet in diameter and over (1) one operator and one (1) oiler.

B. All Micro Tunneling operations shall require three (3) Operators, two (2) Class I Operating Engineers and one (1) Class III Operating Engineer, for tunneling machines and pipe jacking.

29

---

($.50) per hour wage increase over and above the regular rate of pay for operating the creter crane.

## SECTION 8 - TRUCK MOUNTED CONCRETE PUMPS AND CONVEYORS

Truck mounted concrete pump or conveyor operations shall require an operator. When such machines are equipped with a boom or conveyor, which is capable of extending ninety feet (90') or more, the engineer shall receive an additional Fifty Cents ($.50) per hour wage increase over and above the regular rate of pay for operating the concrete pump or conveyor.

## SECTION 9 - HELICOPTERS

The use of helicopters (external loads) under the terms of this Agreement shall require a three (3) man crew, one (1) pilot and two (2) controllers. The pilot and controllers must have direct radio communications during the actual hoisting operation.

The crew shall receive the hourly wage rate set forth in this Agreement for crane operators, and in addition, the pilot shall receive long boom pay up to a maximum length of 500 feet.

## SECTION 10 - UNDERGROUND WORK

(A) Employees working in tunnels, shafts, etc., shall be paid an additional Forty Cents ($.40) per hour over the regular negotiated wage rate. In addition to this, employees working under air pressure (½ lb. to 7 lbs.) shall receive Fifty Cents ($.50) per hour over the regular negotiated wage rate. Employees working under air pressure (7 lbs. or over) shall receive Sixty-Five Cents ($.65) per hour over the regular negotiated wage rate. Underground and air pressure pay differential shall apply for the full shift and all overtime to any employee performing work underground or under air pressure.

28

sign such work to Operating Engineers but shall assign such work to Operating Engineers as the Laborer employees of the Employer currently assigned to such work leave the employ of the Employer through termination or retirement. Upon request, the Employer shall provide a list of the Laborer employees who are covered by this grandfather provision and shall notify the Operating Engineers when such Laborer employees terminate their employment or retire.

12.5 Grievances alleging violations of this Section 12 shall be processed through the Grievance Procedure in Article XIII of this Agreement and shall not be considered to be jurisdictional disputes and thereby excluded from the Grievance Procedure.

## SECTION 13 - TIEBACK MACHINES

Tieback machines rated by the manufacturer to have working weight of Sixty Thousand (60,000) pounds or more and/or custom built Tieback machines with a working weight of Sixty Thousand (60,000) pounds or more shall require an oiler regardless of motive power.

Tieback machines rated by the manufacturer to have a working weight of less than Sixty Thousand (60,000) pounds and/or custom built Tieback machines with a working weight of less than Sixty Thousand (60,000) pounds shall be subject to the preparation time clause Article VIII, Section 1, of the Agreement regardless of motive power.

## SECTION 14 - ASPHALT PLANTS

An Operator and apprentice/oiler shall be present at all times when Plant is in operation. When Plant is not in operation and silo has been loaded the previous day, the operator shall be present to discharge the material from silo.

31

## SECTION 12 - BOBCATS, SKIDSTEER LOADERS, FORKLIFTS SERVING BRICK MASONS AND DRILLS

12.1 The operation of Bobcats and Skidsteer Loaders shall be assigned to Operating Engineers except as otherwise provided herein. Bobcats and Skidsteer Loaders, including those machines equipped with small jackhammers (pencil breakers) may be assigned to Laborers for the following work:

(a) building demolition work (inside the structure).

(b) minor excavation such as curb tear out, replacement and back filling.

(c) raising, lowering or movement of manholes.

(d) residential concrete work using one bobcat/skid steer loader. If more than one such machine is used, additional machines shall be assigned to Operating Engineers.

12.2 Forklifts and bobcats with pallet fork attachments serving eight (8) or more brick masons on commercial projects shall be operated by Operating Engineers. Forklifts and bobcats with pallet attachments serving seven (7) or fewer brick masons on commercial projects may be assigned to Laborers.

12.3 Drilling operations using air track type machines shall be the jurisdiction of the Laborers. Drills where compressor units do not supply the power in the operation of the drill shall be the jurisdiction of the Operating Engineers. All drills in tunnels are the jurisdiction of the Laborers.

12.4 The provisions of this Section shall become effective June 1, 1995. Employers who have traditionally assigned any of the above described bobcat and skidsteer loader operations to Laborers shall not be required to reas-

30

# ARTICLE IX

## SECTION 1 - DISCHARGE

The Employer shall have the right to discharge any employee for just cause. The Employer shall notify the Union within twenty-four (24) hours of the discharge of such employee.

## SECTION 2 - NOTICE ON LEAVING JOB

No employee shall leave his job without giving due notice to the Employer and the Union.

## SECTION 3 - REGULAR ASSIGNED ENGINEERS

The engineers, or crew regularly assigned to a piece of equipment on a single or a multiple shift operation shall be given preference when this piece of equipment is required to work, be repaired or moved (in accordance with Article VI) on a regular workday, Saturday, Sunday and holiday or other overtime.

## SECTION 4 - CHANGING FROM ONE MACHINE TO ANOTHER

(a) The following shall be the maximum changes an employee shall make during a shift: Machine A to Machine B, back to Machine A plus one other machine. If the rate applicable to one machine is higher than that of another, the higher rate shall apply to and be paid for the full shift. The aforementioned change shall apply to all one, two and three shift operations, respectively.

(b) In interpreting and applying this Article, it is understood and agreed that the language therein is not in any way to be interpreted as a limitation on the amount of work any employee is required to do, but only as a limitation on the number of machines such employee can be required to operate or service.

32

(c) Any employee covered by this Agreement shall not be permitted to change to a machine that another employee covered by this Agreement has been employed to operate unless the latter has been discharged for just cause, and the Union has been notified of such discharge. However, if through no act or fault of the Employer, the Regular Assigned Employee is not available for work, this clause shall be inoperative.

This provision shall not apply to minor machines in the following instances, notwithstanding Article VI, "Regular Engineer".

(1) Small compressors, earth rollers and form graders when used on paving work.

(2) Small graders, small rollers and small spreaders when used in connection with a blacktop operation.

(3) Small combination hoes, trenching machines and post augers used in connection with the installation of traffic signals.

## SECTION 5 - SKIDSTEERS

Skidsteers or machines of a like nature that are designed to use bucket attachments of various sizes, such machines shall be in Class V wage category.

## SECTION 6 - IDLE TIME - CLASS I, CLASS II, CLASS III EQUIPMENT

In case of a layoff, a machine must be idle two (2) work days before another employee can be assigned to such machine. If such machine is reactivated before the two (2) day period, the original employee shall be given first opportunity of employment on said machine. However, if such employee is not available, this paragraph shall be inoperative.

33

CLASS IV EQUIPMENT AND OILERS - In case of a layoff, a machine must be left idle one (1) working day before another employee can be assigned to such machine. If such machine is reactivated before the one (1) day period, the original employee shall be given first opportunity of employment on said machine. However, if such equipment is not available, this paragraph shall be inoperative.

## ARTICLE X
## DUTIES OF THE OILER

It shall be the duty of the oiler to keep the machine to which he is assigned thoroughly lubricated and reasonably clean, as instructed by the Engineer and to maintain the machine and assist in such work as directly affects the operation of the machine. The oiler shall be under the technical direction of the Engineer, perform such duties as he prescribes and remain at all times in close proximity to the machine.

The same rules and regulations regarding overtime and working conditions which apply to Engineers shall also apply to oilers, except the oiler shall take his lunch period before or after the engineer and grease the machine during the engineer's lunch time.

## ARTICLE XI
## SMALL EQUIPMENT

### SECTION 1 - SMALL EQUIPMENT

An operating engineer servicing and maintaining the following listed Class IV machinery: Small Air Compressors, Small Generators, Small Electric Winches, Welding Machines and Sump Pumps three inch or under - shall not be required to maintain more than a total of five (5) such machines of the same type, except Small Electric Winches for which the total number maintained shall not be more than four (4), nor shall such employee be required to ser-

34

vice and maintain more than a total of five (5) of the above listed machines in combination. When employees of the bargaining unit are employed to service and maintain mechanical heaters, such employees shall not be required to service and maintain more than a total of five (5) such heaters. Where a member of the bargaining unit is required to service and maintain more than a total of five (5) heaters, such employee shall be compensated at the Class I rate of pay negotiated for Crane Operators in this Agreement. Assignment of such machines shall not exceed a total of eight (8). An Engineer shall not be required on one (1) small heater of less than 250,000 B.T.U.

### SECTION 2 - SMALL CATEGORY EQUIPMENT ASSIGNMENT

(a) In the event that the Employer uses not to exceed a total of three (3) of the following listed small Class III equipment in any combination on a job site where members of the bargaining unit are employed by the Employer:

1. Small pumps 3" or under doing intermittent pumping
2. One welding machine
3. Single light plant (50kw and under)
4. Three air cooled welding machines
5. One similar piece of equipment

A member of the bargaining unit shall be assigned and compensated at the rate of Fifty Cents ($.50) per hour for the entire shift over and above the negotiated rate.

(b) In the event an Employer uses any one of the following (B) 1, (B) 2, (B) 3 on a job site where members of the bargaining unit are employed by the Employer:

1. One (1) air compressor of 250 c.f.m. or under

35

2. One (1) to eight (8) electric submersible pumps not to exceed three (3) inches each

3. One (1) or two (2) four (4) inch electric submersible pump

A member of the bargaining unit shall be assigned and compensated at the rate of Fifty Cents ($.50) per hour for the entire shift over and above the negotiated rate.

(c) In the event that there are no members of the bargaining unit employed by the Employer on the job site, the Employer shall have the right to operate equipment as listed in any one (only) of the above listed (A) 1, (A) 2, (A) 3, (A) 4, (A) 5, or (B) 1, (B) 2, or (B) 3 until such time as members of the bargaining unit are employed by the Employer on the job site, but in no event is work coming within the jurisdiction of the bargaining unit to be permanently assigned to any other employee.

(d) In the event an Employer uses a compressor (1) under 250 c.f.m. on a job site where member(s) of the bargaining unit are employed, a member of the bargaining unit shall be assigned and compensated at the rate of Fifty Cents ($.50) per hour for the entire shift over and above the member's negotiated rate.

(e) In the event an Employer uses a compressor (1) over 250 c.f.m. on a job site where there are no members of the bargaining unit employed sub-section (d) above shall apply and the Employer shall employ a member of the bargaining unit at the Class IV rate of pay listed in this Agreement.

## SECTION 3 - ELECTRIC SUBMERSIBLE PUMPS - JOB SITES OR PROJECTS

(a) On a job site where more than eight (8) three inch (3") in diameter or less electric submersible pumps are being used, the Employer shall require a full time pump

36

operator at the pump wage rate, to provide for the operation and maintenance of said pumps, during the entire regular daytime shift – Monday through Friday and on such other days as the regular daytime crew are conducting full scale job operations. No other operator shall receive premium pay. In the event of a breakdown in any pumps, the assigned operator shall be subject to call at any time and any day to assist in the installation, servicing or removal and re-location of said pumps. In such breakdown case, the Employer shall notify the Operator by telephone to report to the job site if available for said duty. An employee shall not be required to operate and maintain more than a total of 75" discharge.

When a discharge exceeds 75" or when the Combination of A & C does not apply, the Employer shall require a second full time pump operator - Monday through Friday on the same basis as stated above. However, the Employer may assign the second pump operator to the second shift. It is further understood when the two (2) aforementioned pump operators are employed, the total inches of discharge may be increased to 175".

When a discharge exceeds 175", the Employer shall require a third full time pump operator - Monday through Friday on the same basis as stated above. However, the Employer may assign the third pump operator to the third shift.

The conditions set forth herein for the first pump operator are also applied to the second and third pump operators respectively.

(b) In the event that the Employer uses electric submersible pumps three inches (3") in diameter or less not to exceed a total of eight (8) such pumps and a member of the bargaining unit is being utilized on the job site, the member shall be assigned to the pumps and shall be compen-

37

## SECTION 4 - ELECTRIC SUBMERSIBLE PUMPS - TUNNELS, ETC.

The Employer shall require a full time pump operator when B or C of Section 3 above is exceeded and the job or project is minus 100' in depth as per the specifications, bench mark, etc., to operate and maintain electric submersible pumps used on tunnels, shafts, and other underground enclosed work, during the entire daytime shift - Monday through Friday and on such other days as the regular daytime crew are conducting full scale job operations. No other operator shall receive premium pay or be required on the other two shifts in the 24 hour day except when the total pump discharge on the project exceeds 30". In this case, a second pump man shall be assigned to the second shift - Monday through Friday and on such other days as the regular second shift crew are conducting full scale job operations.

In the event the total pump discharge on the project exceeds 60" a third pump man shall be assigned to the third shift - Monday through Friday and on such other days as the regular third shift crew are conducting full scale job operations.

When pumps require IN LINE service and maintenance, such work will be performed by the normal shift pump operator. When pumps require repair or rebuilding, beyond normal warranty work, such work shall be the work of the mechanics.**

## ARTICLE XII
### HIRING

When an Employer performs work covered by this Agreement in the areas covered by Local Union No. 150, the following shall apply:

**See illustration and definition attached to the back of contract.

39

---

sated at the rate of Fifty Cents ($.50) per hour for the entire shift over and above the members negotiated rate of pay. An employee shall not be required to operate or maintain more than a total of 15" discharge.

(c) In the event the Employer uses one (1) or two (2) four inch (4") electric submersible pumps and a member of the bargaining unit is being utilized on the site, the member shall be assigned to the pumps and shall be compensated at the rate of Fifty Cents ($.50) per hour for the entire shift over and above the member's negotiated rate of pay. An employee shall not be required to operate and maintain more than a total 8" discharge.

(d) In the event the Employer uses more than one (1) or two (2) four inch (4") electric submersible pumps or any electric submersible pump larger than four inches (4") in diameter a full time pump operator shall be required Monday through Friday on each shift when pumps are in operation and on such other days as the regular crew is conducting full scale job operations to provide for operation and maintenance of such pump or pumps. An employee shall not be required to operate and maintain more than 150" discharge.

## COMBINATION A & C

An employee may be assigned to operate and maintain a combination of A & C pumps above. Such employee shall be compensated at the rate of Fifty Cents ($.50) per hour for the entire shift over and above the negotiated pump rate of pay.

## COMBINATION D & B

An employee may be assigned to operate and maintain a combination of D & B pumps above. Such employee shall be compensated at the rate of Fifty Cents ($.50) per hour for the entire shift over and above the negotiated pump rate of pay.

38

Audit fees shall be paid for by the Company, along with a 10% penalty payable to the Union.

**STEP 2.** In the event the grievance cannot be resolved within seven (7) working days of the STEP ONE conference, it shall be reduced to writing and referred for conference and resolution by designated officials of the Union and the Contractor at a pre-grievance hearing to be held at the office of Local 150, 6200 Joliet Road, Countryside, Illinois, unless another location is mutually agreed to.

**STEP 3.** In the event the grievance cannot be resolved by STEP TWO, the written grievance shall be submitted within fifteen (15) days to the Joint Grievance Committee created in this Article.

The Union and Association have together created a Joint Grievance Committee to resolve grievances arising under this Agreement. This Committee shall consist of an equal number of members representing Employers and the Union. The Union or Association may appoint alternate members.

The Joint Grievance Committee shall have the power to resolve all grievances before it and shall have the right to examine all records of the Employers and employees as is reasonably necessary to resolve the grievance.

Where the Joint Grievance Committee, by majority vote, resolves a grievance, no appeal may be taken and such resolution shall be final and binding on all parties and individuals bound by this Agreement.

If the Joint Grievance Committee is unable to resolve a grievance by majority vote, the grievance may be submitted within thirty (30) days to a neutral arbitrator. If the Union and the Association or the Employer, as the case may be, cannot agree on an arbitrator, then an arbitrator shall be selected in accordance with the rules and proce-

---

The Employer will obtain all employees used in the performance of such work through the Referral Offices of the Local Union in accordance with the non discriminatory provisions governing the operation of the Local Union's Referral Offices set out in the current effective Addendum No. 1 to this Agreement as if set forth in full herein. Furthermore, subsequent to referral and hire the Employer shall make and maintain all work assignments of preferred employees in full compliance with the provisions of said Addendum No. 1. Employer maintains the right to assignment of preferred employees to other assignments.

## ARTICLE XIII

## SECTION 1 - GRIEVANCES AND ARBITRATION

For the purpose of this Agreement, the term "grievance" is any claim or dispute involving an interpretation or application of the Agreement by an employee, or an Employer, or the Union, or the Association that one or the other of the aforesaid persons or organization is violating or has violated this Agreement.

**STEP 1.** A grievance shall first be taken up between the Union's Business Representative assigned to the job and a designated representative of the Employer. The Union must file the grievance within forty-five (45) days of the date of occurrence giving rise to the grievance or when the affected employee knew or reasonably should have known of the existence of the grievance. Grievances not filed within the forty-five (45) day period are deemed waived and are not subject to being processed through this procedure.

The above forty-five (45) day limit may be waived for violations of Article III Section 1 - Work Day, Work Week, Eight Hour Guarantee, Show Up Pay, Call Off and Prep Time, also, Article III Sections 2 and 3. The liability shall be for three (3) years of the violation, verified by audit.

dures of the American Arbitration Association. The cost of such arbitrator shall be borne equally by both parties to the arbitration, and the decision of the arbitrator shall be final and binding on all parties and individuals bound by this Agreement.

The time limits provided in this Section may be extended by mutual written consent of the Union, the Association and/or the Employer.

Neither the Joint Grievance Committee nor an arbitrator shall have any authority to add to, detract from, or in any way alter the provisions of this Agreement or make a new Agreement.

Decision of the Joint Grievance Committee and Arbitration Awards shall be complied with within seven (7) days of receipt of the decision by the losing party. A party which fails to comply with the seven (7) day period shall be required to pay an additional ten (10%) percent of the amounts as owed as liquidated damages for failure to comply with the decision or award. In the event the prevailing party is required to file suit to enforce the decision or award, and it prevails, it shall be entitled to recover its costs, including attorney's fees, from the losing party.

There shall be no lockout by an Employer during the term of this Agreement.

Except as provided in Article XX, Sections 1 and 2 and 4 of this Agreement, there shall be no strikes or work stoppages by the Union during the term of this Agreement.

## SECTION 2 - JURISDICTIONAL AWARD

Unless determined by Jurisdictional Award as hereinafter set forth, all work that has been heretofore performed under agreement or by custom or by area practice with any other local organization shall continue to be so performed until such Jurisdictional Award is made.

42

Whenever a jurisdictional dispute shall arise between local labor organizations, the provisions of this Agreement shall prevail until a Jurisdictional Award has been made by the proper Jurisdictional Board of International Unions of which the local disputing Labor Organizations are members. The Employer agrees to abide by such Jurisdictional Award, but there shall be no work stoppage while the settlement of the dispute is pending. It is further agreed that the Employer will abide by such mutual agreement reached between the Local Union and other Local Unions and the International Union, including, but not limited to the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry.

## ARTICLE XIV
## JOB STEWARD

The job steward shall be selected by the Union from among the members of the bargaining unit employed at the job site at the time of selection. The job steward shall be a working employee. The Union shall have the right to designate which employee shall be the steward or acting steward. The job steward shall have no special employment priority or security. In case of any minor difficulty, the steward shall be permitted reasonable time to adjust same without pay deduction.

43

## ARTICLE XV

**SECTION 1**

### WAGE RATES AND FRINGE BENEFITS

The wage rates and fringe benefits for the respective classifications set forth below shall be effective on the dates indicated:

| FRINGE BENEFITS | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| HEALTH AND WELFARE | $5.15 | $5.40 | $5.70 | $6.05 | $6.45 | $6.85 |
| PENSION | $4.00 | $4.25 | $4.50 | $4.85 | $5.15 | $5.60 |
| VACATION | $1.60 | $1.70 | $1.80 | $1.80 | $1.80 | $1.90 |
| APPRENTICESHIP | $ .45 | $ .50 | $ .55 | $ .60 | $ .65 | $ .70 |
| INDUSTRY ADVANCEMENT FUND and CONSTRUCTION INDUSTRY RESEARCH AND SERVICE TRUST FUND | $ .18 | $ .18 | $ .18 | $ .18 | $ .18 | $ .18 |

44

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| CRAFT FOREMAN | $34.25 | $36.05 | $37.90 | $39.80 | $41.75 | $43.75 |
| [5*] Certified Friction Crane Operator Field Mechanics and Field Welders | $33.25 | $35.05 | $36.90 | $38.80 | $40.75 | $42.75 |

[5*]City of Chicago Crane License and/or Local 150 Advanced Crane Certification.

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| [6*] Certified Crane Operator requiring an Oiler | $32.25 | $34.05 | $35.90 | $37.80 | $39.75 | $41.75 |
| [6*] All Other Certified Crane Operators requiring No Oiler | $31.25 | $33.05 | $34.90 | $36.80 | $38.75 | $40.75 |
| Dowell Machine with Air Compressor | $31.25 | $33.05 | $34.90 | $36.80 | $38.75 | $40.75 |
| Certified Finish Blade | $____ | $33.05 | $34.90 | $36.80 | $38.75 | $40.75 |
| Certified Track Excavator | $____ | $33.05 | $34.90 | $36.80 | $38.75 | $40.75 |
| [7+] GRADALL and machines of like nature | $31.25 | $33.05 | $34.90 | $36.80 | $38.75 | $40.75 |

45

| CLASS I | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| [8*] ASPHALT PLANT | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| ASPHALT HEATER AND PLANER COMBINATION | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8*] ASPHALT HEATER SCARFIRE | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| ASPHALT SPREADER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.7 |

[6*]City of Chicago Crane License and/or Local 150 Advanced Crane Certification.
[7+]Requires Oiler pursuant to Article VIII
[8*]Requires Oiler

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| 8* AUTOGRADER/GOMACO | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| or other similar type machines | | | | | | |
| 8* ABG PAVER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| 8* BACKHOES with | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| Caisson attachment | | | | | | |
| BALLAST REGULATOR | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| 8* BELT LOADER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| 8* CAISSON RIGS | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| CAR DUMPER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| CENTRAL REDI-MIX PLANT | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| COMBINATION BACKHOE | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| FRONT ENDLOADER | | | | | | |
| MACHINE (1 cu. yd. | | | | | | |
| backhoe bucket or over | | | | | | |
| or with attachments) | | | | | | |
| 8* CONCRETE BREAKER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| (Truck Mounted) | | | | | | |
| CONCRETE CONVEYOR | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| 8* CONCRETE PAVER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| Over 27E cu. ft. | | | | | | |
| 8* CONCRETE PLACER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |

8*Requires Oiler

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| CONCRETE TUBE FLOAT | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| 7+ CRANES, ALL | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| ATTACHMENTS | | | | | | |
| (NON CERTIFIED) | | | | | | |
| 8* CRANES, HAMMERHEAD, | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| LINDEN, PECO & | | | | | | |
| machines of a like nature | | | | | | |
| CRETER CRANE | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| CRUSHER, STONE, ETC. | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| DERRICKS, ALL | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| DERRICK BOATS | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| 8* DERRICKS, TRAVELING | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| 8* DREDGES | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| ELEVATORS, OUTSIDE | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| TYPE RACK & PINION | | | | | | |
| AND SIMILAR MACHINES | | | | | | |
| 7+ FORMLESS CURB AND | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| GUTTER MACHINE | | | | | | |
| GRADER, ELEVATING | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |

7+Requires Oiler pursuant to Article VIII
8*Requires Oiler

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| GRADER, MOTOR GRADER, MOTOR PATROL AUTO PATROL, FORM GRADER, PULL GRADER, SUBGRADER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8*] GUARD RAIL POST DRIVER TRUCK MOUNTED | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| HOISTS, ONE, TWO & THREE DRUM | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [7+] HYDRAULIC BACKHOES | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [7+] BACKHOES WITH SHEAR ATTACHMENTS | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| MUCKING MACHINE | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8*] PILE DRIVERS AND SKID RIG | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| PRE-STRESS MACHINE | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8*] PUMP CRETES DUAL RAM (requires frequent lubrication and water) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |

[7+]Requires Oiler pursuant to Article VIII
[8*]Requires Oiler

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| [8*] ROCK DRILL-CRAWLER OR SKID RIG | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8*] ROCK DRILL - TRUCK MOUNTED | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| ROCK/TRACK TAMPER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8*] ROTO MILL GRINDER (36" and over) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| ROTO MILL GRINDER (less than 36") | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8*] SLIP-FORM PAVER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8*] SOIL TEST DRILL RIG (Truck Mounted) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| STRADDLE BUGGIES | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| HYDRAULIC TELESCOPING FORM (tunnel) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8*] TRACTOR DRAWN BELT LOADER | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| TRACTOR DRAWN BELT LOADER with attached pusher (two engineers) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| TRACTOR WITH BOOM | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |

[8*]Requires Oiler

48

49

|  | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| TRACTAIRE WITH ATTACHMENTS | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8*] TRAFFIC BARRIER TRANSFER MACHINE | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [7+] TRENCHING | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| TRUCK MOUNTED CONCRETE PUMP with boom | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [9**] RAISED OR BLIND HOLE DRILLS (tunnel shaft) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8*] UNDERGROUND BORING and/or MINING MACHINES 5 ft. in diameter and over tunnel, etc. | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| UNDERGROUND BORING and/or MINING MACHINES under 5 ft. | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| [8*] WHEEL EXCAVATOR | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |
| WIDENER (Apsco) | $30.25 | $32.05 | $33.90 | $35.80 | $37.75 | $39.75 |

[7+]Requires Oiler pursuant to Article VIII
[8*]Requires Oiler
[9**]To be manned pursuant to the letter dated May 2, 1977

| CLASS II | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| [8*] BATCH PLANT | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| BITUMINOUS MIXER | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| BOILER AND THROTTLE VALVE | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| BULLDOZERS | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| CAR LOADER TRAILING CONVEYORS | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| COMBINATION BACKHOE FRONT ENDLOADER MACHINE (less than 1 cu. yd. backhoe bucket or over with attachments) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| COMPRESSOR AND THROTTLE VALVE | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| COMPRESSOR, Common Receiver (3) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| CONCRETE BREAKER OR HYDRO-HAMMER | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| CONCRETE GRINDING MACHINE | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| CONCRETE MIXER OR PAVER 7S series to and including 27 cu.ft. | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.2● |

[8*]Requires Oiler

|  | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| CONCRETE SPREADER | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| CONCRETE CURING MACHINE Burlap machine, Belting machine and Sealing machine | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| CONCRETE WHEEL SAW | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| CONVEYOR MUCK CARS (Haglund or similar type) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| DRILLS, (all) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| FINISHING MACHINE - Concrete | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| GREASER ENGINEER | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| HIGHLIFT SHOVELS or FRONT ENDLOADER | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| HOIST-SEWER DRAGGING MACHINE | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| HYDRAULIC BOOM TRUCKS (all attachments) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| HYDRO-BLASTER(requires two operators) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| [10++]LASER SCREED | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |

[10++]These wage classifications become effective June 1, 2001 and apply only where Employers have determined to assign the operation of such machinery to employees represented by Local 150.

|  | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| ALL LOCOMOTIVES, DINKY | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| [10++]OFF-ROAD HAULING - UNITS (including articulating) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| [10++]NON SELF-LOADING EJECTION DUMP | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| PUMP CRETES: Squeeze cretes - screw type pumps, Gypsum Bulker and pump | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| ROLLER, ASPHALT | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| ROTORY SNOW PLOWS | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| ROTOTILLER, SEAMAN, etc. self-propelled | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| SCOOPS-TRACTOR DRAWN | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| SELF-PROPELLED - COMPACTOR | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| SPREADER – CHIP-STONE, etc. | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| SCRAPER | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| SCRAPER - prime mover in tandem (regardless of size) (Add $1.00 to Class II hourly rate for each hour and for each machine attached thereto, add $1.00 to Class II hourly rate for each hour) | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |

[10++]These wage classifications become effective June 1, 2001 and apply only where Employers have determined to assign the operation of such machinery to employees represented by Local 150.

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| TANK CAR HEATER | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| TRACTORS, PUSH, PULLING | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| Sheeps foot, Disc, Compactor, etc. | | | | | | |
| TUG BOATS | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| MECHANIC-WELDERS | $29.70 | $31.50 | $33.35 | $35.25 | $37.20 | $39.20 |
| working in a permanent shop. Such mechanics when working as field mechanics shall receive the Field Mechanics rate of pay for the entire day. | | | | | | |

This clause shall not apply to work performed within the construction area.

| CLASS III | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| BOILERS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| BROOMS, ALL POWER PROPELLED | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| CEMENT SUPPLY TENDER | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| COMPRESSOR, Common Receiver (2) | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| CONCRETE MIXER (Two bag and over) | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| CONVEYOR, PORTABLE | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| FARM-TYPE TRACTORS used for mowing, seeding, etc. | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| FIREMAN ON BOILERS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| FORKLIFT TRUCKS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| GROUTING MACHINE | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| HOISTS, AUTOMATIC | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| HOISTS, ALL ELEVATORS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| HOISTS, TUGGER SINGLE DRUM | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| JEEP DIGGERS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| [10ǂǂ] LOW BOYS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| PIPE JACKING MACHINES | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| POST-HOLE DIGGER | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| POWER SAW, CONCRETE, Power Driven | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| PUG MILLS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |

[10ǂǂ]These wage classifications become effective June 1, 2001 and apply only where Employers have determined to assign the operation of such machinery to employees represented by Local 150.

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| ROLLERS, other than asphalt | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| SEED AND STRAW BLOWER | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| STEAM GENERATORS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.1 |
| STUMP MACHINE | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| WINCH TRUCK with "A" Frame | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| WORK BOATS | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |
| TAMPER - form-motor driven | $27.65 | $29.45 | $31.30 | $33.20 | $35.15 | $37.15 |

**CLASS IV**

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| AIR COMPRESSOR - small 250 and under (1 to 5 not to exceed a total of 300 ft.) | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| AIR COMPRESSOR - large over 250 | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| COMBINATION - Small Equipment Operator | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| DIRECTIONAL BORING MACHINE | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| GENERATORS - Small 50 kw and under | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| GENERATORS - Large over 50 kw | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |

56

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| HEATERS, Mechanical | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| HYDRAULIC POWER UNIT (pile driving, extracting, or drilling) | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| HYDRO-BLASTER (requires two operators) | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| LIGHT PLANTS, all (1 through 5) | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| PUMPS, over 3" (1 to 3 not to exceed a total of 300 ft.) | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| PUMPS, WELL POINTS | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| TRACTAIRE | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| WELDING MACHINES (2 through 5) | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| WINCHES, 4 small electric drill winches | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |

57

**CLASS V**

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| SKIDSTEER LOADER (all) | $25.05 | $26.85 | $28.70 | $30.60 | $32.55 | $34.55 |
| BRICK FORKLIFTS | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |
| OILERS | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| [10††]DIRECTIONAL BORING MACHINE LOCATOR | $26.25 | $28.05 | $29.90 | $31.80 | $33.75 | $35.75 |

| | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| **WINTER MAINTENANCE WORK** MAINTENANCE work done in shop or yard, excluding Master Regular Mechanics, during period from December 1 to March 31 | $25.80 | $27.60 | $29.45 | $31.35 | $33.30 | $35.30 |

58

**HAZMAT PAY**

Level A  Add $3.00 to Classification

Level B  Add $2.00 to Classification

Level C  Add $1.00 to Classification

[10††]These wage classifications become effective June 1, 2001 and apply only where Employers have determined to assign the operation of such machinery to employees represented by Local 150.

## SECTION 2
### FRINGE BENEFITS FOR FIRST AND SECOND YEAR APPRENTICES

| FRINGE BENEFITS | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| HEALTH AND WELFARE | $5.15 | $5.40 | $5.70 | $6.05 | $6.45 | $6.85 |
| PENSION | $2.45 | $2.70 | $2.95 | $3.30 | $3.60 | $4.05 |
| VACATION | $0.85 | $0.95 | $1.05 | $1.05 | $1.05 | $1.15 |
| APPRENTICESHIP | $0.45 | $0.50 | $0.55 | $0.60 | $0.65 | $0.70 |
| INDUSTRY ADVANCEMENT FUND and CONSTRUCTION INDUSTRY RESEARCH AND SERVICE TRUST FUND | $ .18 | $ .18 | $ .18 | $ .18 | $ .18 | $ .18 |

59

### FRINGE BENEFITS FOR THIRD AND FOURTH YEAR APPRENTICES

| FRINGE BENEFITS | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| HEALTH AND WELFARE | $5.15 | $5.40 | $5.70 | $6.05 | $6.45 | $6.85 |
| PENSION | $4.00 | $4.25 | $4.50 | $4.85 | $5.15 | $5.60 |
| VACATION | $1.60 | $1.70 | $1.80 | $1.80 | $1.80 | $1.90 |
| APPRENTICESHIP | $0.45 | $0.50 | $0.55 | $0.60 | $0.65 | $0.70 |
| INDUSTRY ADVANCEMENT FUND and CONSTRUCTION INDUSTRY RESEARCH AND SERVICE TRUST FUND | $ .18 | $ .18 | $ .18 | $ .18 | $ .18 | $ .18 |

| WAGES FOR APPRENTICES | 6/1/01 | 6/1/02 | 6/1/03 | 6/1/04 | 6/1/05 | 6/1/06 |
|---|---|---|---|---|---|---|
| First Year | $15.45 | $16.35 | $17.30 | $18.25 | $19.25 | $20.30 |
| Second Year | $19.70 | $20.85 | $22.05 | $23.30 | $24.55 | $25.85 |
| First half of Third Year | $22.70 | $24.05 | $25.45 | $26.85 | $28.35 | $29.85 |
| Second half of Third Year | $24.20 | $25.65 | $27.15 | $28.65 | $30.20 | $31.8 |
| First half of Fourth Year | $25.75 | $27.25 | $28.85 | $30.45 | $32.10 | $33.80 |
| Second half of Fourth Year | $27.25 | $28.85 | $30.50 | $32.25 | $34.00 | $35.80 |

60

At the end of the fourth year, apprentices shall become Journeymen Engineers and shall be paid pursuant to the terms of the wage classifications set forth in this Agreement.

In no event shall the rate of pay for apprentices exceed that rate provided for the classification of machine the apprentice may be operating as contained in Article XV of this Agreement.

Apprentices shall be paid according to the Apprenticeship Introduction Slip issued to the Employer and the Apprentice at the time the apprentice is dispatched by the Union to the Employer.

The Introduction Slip must indicate the progress status of the apprentice. As the apprentice progresses in status, he shall be paid pursuant to the rates set forth in this Agreement.

In addition to the above provisions for rates of pay, fringe benefit contributions shall be as provided for in this Agreement covering work being performed by said apprentices.

## ESTABLISHMENT OF JOINT LABOR MANAGE- MENT COMMITTEE FOR CERTIFICATION. TRAINING/TESTING DATA BASE

The Parties agree to establish a Labor Management Committee to develop and implement a program whereby Operating Engineers will be certified as being competent to operate most of the types of equipment covered by this Agreement. The Labor Management Committee created under this provision shall establish the standards and criteria for certification of competency. The Labor Management Committee will have the authority to add new equipment to the certified Operator list, when mutually agreed to. The premium pay for all additional certified

61

classifications will be $1.00 per hour over the regular hourly rate.

A website will be developed and implemented to validate testing and training of the bargaining unit members.

## ARTICLE XVI

## SECTION 1 - WELFARE FUND

Effective June 1, 2001, the Employer shall pay FIVE DOLLARS AND FIFTEEN CENTS ($5.15) per hour for each hour for which the employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2001, the Employer shall pay FIVE DOLLARS AND FIFTEEN CENTS ($5.15) per hour for each hour worked by a Supervisor covered by this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2002, the Employer shall pay FIVE DOLLARS AND FORTY CENTS ($5.40) per hour for each hour for which the employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2002, the Employer shall pay FIVE DOLLARS AND FORTY CENTS ($5.40) per hour for each hour worked by a Supervisor covered by this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2003, the Employer shall pay FIVE DOLLARS AND SEVENTY CENTS ($5.70) per hour for each hour for which the employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2003, the Employer shall pay FIVE DOLLARS AND SEVENTY CENTS ($5.70) per hour for

each hour worked by a Supervisor covered by this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2004, the Employer shall pay SIX DOLLARS AND FIVE CENTS ($6.05) per hour for each hour for which the employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2004, the Employer shall pay SIX DOLLARS AND FIVE CENTS ($6.05) per hour for each hour worked by a Supervisor covered by this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2005, the Employer shall pay SIX DOLLARS AND FORTY-FIVE CENTS ($6.45) per hour for each hour for which the employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2005, the Employer shall pay SIX DOLLARS AND FORTY-FIVE CENTS ($6.45) per hour for each hour worked by a Supervisor covered by this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2006, the Employer shall pay SIX DOLLARS AND EIGHTY-FIVE CENTS ($6.85) per hour for each hour for which the employee receives wages under the terms of this Agreement into the Midwest Operating Engineers Welfare Fund.

Effective June 1, 2006, the Employer shall pay SIX DOLLARS AND EIGHTY-FIVE CENTS ($6.85) per hour for each hour worked by a Supervisor covered by this Agreement into the Midwest Operating Engineers Welfare Fund.

The Welfare Fund maintains a place of business at 6150 Joliet Road, Countryside, Illinois 60525, or at such other place designated by the Trustees. Contributions of the Employer shall be forwarded to such business office together with report forms supplied for such purpose not later than the tenth (10th) of the following month.

Contributions to the aforesaid Health and Welfare Fund shall not constitute or be deemed wages due to the employee.

It is understood and agreed that the Employer shall be bound to the terms and provisions of the Agreement and Declaration of Trust of the Midwest Operating Engineers Welfare Fund, and all amendments heretofore or hereafter made thereto, as though the same were fully incorporated herein.

If payment for contributions as defined above is not received by the Fund Office by the twentieth (20th) day of the month, the Employer shall be deemed to be in violation of this Agreement and the aforementioned Trust Agreement and shall be liable for contributions due, liquidated damages, interest, and any other cost of collection.

Anything herein contained to the contrary notwithstanding, an Employer required to make contributions on behalf of a "Supervisor" shall make contributions on the basis of 168 hours each month.

The parties recognize that individuals employed by corporations who are party to this Agreement may perform both bargaining unit and non-bargaining unit work. Certain of these employees receive compensation in such a manner that it is difficult to determine for purposes of fringe benefit contributions the precise number of hours which are spent performing bargaining unit work. It is therefore agreed that when an employee who is employed by a corporation, performs both bargaining unit work and non-bargaining unit work and who:

A. Is a shareholder, officer and/or director of the corporation or

B. Is a relative (father, mother, son, daughter, brother, sister, husband, wife, in-law) of a shareholder, officer and/or director of the corporation, the bargaining parties have agreed that any shareholder/relative reporting under this clause must report 150 hours per month twelve (12) months a year, irrespective of the amount of work they perform or the amount of compensation they receive in any individual month.

Corporate officers and their children will be exempt from this provision when they operate equipment doing bargaining unit work during an emergency such as fire, flood or to save life or property.

The exemptions provided herein do not relieve the Employer from the obligations of Article IX, Section 3 Regular Assigned Engineers of this Agreement.

**FAMILY AND MEDICAL LEAVE ACT (FMLA)** - the Employer of any employee who is eligible for and requests leave under the Family and Medical Leave Act (FMLA) shall promptly notify the Health and Welfare Fund Office, and before the leave commences, if possible. Employers shall make Health and Welfare contributions for any employee who is taking leave under the FMLA on the basis of forty (40) hours per week.

**SECTION 2 - PENSION FUND**

It is understood and agreed that there shall be continued a Trusteed Pension Plan known as the Midwest Operating Engineers Pension Fund.

Effective June 1, 2001, the Employer shall be liable to contribute FOUR DOLLARS AND NO CENTS ($4.00) per hour for which the employee receives wages under the terms of this Agreement and shall pay FOUR DOLLARS

AND NO CENTS ($4.00) per hour for each hour worked by a Supervisor covered by this Agreement to the Fund Office which will be paid to the Midwest Operating Engineers Excess Benefit Fund in the amount (if any) determined by the Trustees of the Excess Benefit Fund in accordance with the provisions of the Excess Benefit Plan, and the remainder, if any, will be paid to the Midwest Operating Engineers Pension Fund.

Effective June 1, 2002, the Employer shall be liable to contribute FOUR DOLLARS AND TWENTY-FIVE CENTS ($4.25) per hour for which the employee receives wages under the terms of this Agreement and shall pay FOUR DOLLARS AND TWENTY-FIVE ($4.25) per hour for each hour worked by a Supervisor covered by this Agreement to the Fund Office which will be paid to the Midwest Operating Engineers Excess Benefit Fund in the amount (if any) determined by the Trustees of the Excess Benefit Fund in accordance with the provisions of the Excess Benefit Plan, and the remainder, if any, will be paid to the Midwest Operating Engineers Pension Fund.

Effective June 1, 2003, the Employer shall be liable to contribute FOUR DOLLARS AND FIFTY CENTS ($4.50) per hour for which the employee receives wages under the terms of this Agreement and shall pay FOUR DOLLARS AND FIFTY CENTS ($4.50) per hour for each hour worked by a Supervisor covered by this Agreement to the Fund Office which will be paid to the Midwest Operating Engineers Excess Benefit Fund in the amount (if any) determined by the Trustees of the Excess Benefit Fund in accordance with the provisions of the Excess Benefit Plan, and the remainder, if any, will be paid to the Midwest Operating Engineers Pension Fund.

Effective June 1, 2004, the Employer shall be liable to contribute FOUR DOLLARS AND EIGHTY-FIVE CENTS ($4.85) per hour for which the employee receives wages

under the terms of this Agreement and shall pay FOUR DOLLARS AND EIGHTY-FIVE CENTS ($4.85) per hour for each hour worked by a Supervisor covered by this Agreement to the Fund Office which will be paid to the Midwest Operating Engineers Excess Benefit Fund in the amount (if any) determined by the Trustees of the Excess Benefit Fund in accordance with the provisions of the Excess Benefit Plan, and the remainder, if any, will be paid to the Midwest Operating Engineers Pension Fund.

Effective June 1, 2005, the Employer shall be liable to contribute FIVE DOLLARS AND FIFTEEN CENTS ($5.15) per hour for which the employee receives wages under the terms of this Agreement and shall pay FIVE DOLLARS AND FIFTEEN CENTS ($5.15) per hour for each hour worked by a Supervisor covered by this Agreement to the Fund Office which will be paid to the Midwest Operating Engineers Excess Benefit Fund in the amount (if any) determined by the Trustees of the Excess Benefit Fund in accordance with the provisions of the Excess Benefit Plan, and the remainder, if any, will be paid to the Midwest Operating Engineers Pension Fund.

Effective June 1, 2006, the Employer shall be liable to contribute FIVE DOLLARS AND SIXTY CENTS ($5.60) per hour for which the employee receives wages under the terms of this Agreement and shall pay FIVE DOLLARS AND SIXTY CENTS ($5.60) per hour for each hour worked by a Supervisor covered by this Agreement to the Fund Office which will be paid to the Midwest Operating Engineers Excess Benefit Fund in the amount (if any) determined by the Trustees of the Excess Benefit Fund in accordance with the provisions of the Excess Benefit Plan, and the remainder, if any, will be paid to the Midwest Operating Engineers Pension Fund.

For Apprentices see schedule in Article XV, Section 2.

The Pension Fund has been established and shall be administered in accordance with the Labor Management Relations Act of 1947 as amended.

Payments accompanied by monthly reports on forms provided for the same are due in the Pension Office, 6150 Joliet Road, Countryside, Illinois 60525, or such other place as designated by the Trustees, not later than the tenth (10th) of the following month for the preceding month.

Contributions to the Pension Trust Fund shall not constitute or be deemed wages due to the employee.

It is understood and agreed that the Employer shall be bound by the terms and provisions of the Agreement and Declaration of Trust of the Midwest Operating Engineers Pension Fund, and all amendments theretofore or hereafter made thereto, as though the same were fully incorporated herein.

If payment for contributions as defined above is not received by the Fund Office by the twentieth (20th) day of the month, the Employer shall be deemed to be in violation of this Agreement and the aforementioned Trust Agreement and shall be liable for contributions due, liquidated damages, interest, and any other cost of collection.

Anything herein contained to the contrary notwithstanding, an Employer required to make contributions on behalf of a "Supervisor" shall make contributions on the basis of 168 hours each month.

The parties recognize that individuals employed by corporations who are party to this Agreement may perform both bargaining unit and non-bargaining unit work. Certain of these employees receive compensation in such a manner that it is difficult to determine for purposes of fringe benefit contributions the precise number of hours which are spent performing bargaining unit work. It is

68

therefore agreed that when an employee who is employed by a corporation, performs both bargaining unit work and non-bargaining unit work and who:

A. Is a shareholder, officer and/or director of the corporation or

B. Is a relative (father, mother, son, daughter, brother, sister, husband, wife, in-law) of a shareholder, officer and/or director of the corporation, the bargaining parties have agreed that any shareholder/relative reporting under this clause must report 150 hours per month twelve (12) months a year, irrespective of the amount of work they perform or the amount of compensation they receive in any individual month.

Corporate officers and their children will be exempt from this provision when they operate equipment doing bargaining unit work during an emergency such as fire, flood or to save life or property.

The exemptions provided herein do not relieve the Employer from the obligations of Article IX, Section 3 Regular Assigned Engineers of this Agreement.

Commencing October 1, 2000, the Employer agrees to make payments to the Midwest Operating Engineers Pension Fund, in the amount (if any) determined by the Trustees of the Excess Benefit Fund. Such contributions to the Excess Benefit Fund shall be an offset against the amounts otherwise due to be paid by the Employer to the Midwest Operating Engineers Pension Fund pursuant to the first paragraph of this Section, and the amount the Employer is obligated by this Agreement to contribute to the Midwest Operating Engineers Pension Fund shall be reduced by the amounts contributed to the Excess Benefit Fund pursuant to the determination of the Trustees of the Excess Benefit Fund. The parties agree that the Midwest Operating Engineers Excess Benefit Fund (a) will be a

69

Effective the 1st day of June, 2006, each Employer bound hereby shall pay ONE DOLLAR AND NINETY CENTS ($1.90) per hour for each hour wages are received by an employee covered by this Agreement into the Local 150 I.U.O.E. Trusteed Vacations Savings Plan.

For Apprentices, see schedule in Article XV, Section 2.

In computing the above amounts, the Employer is required to add the amount per hour to the employee's gross wages and then deduct the Social Security and Withholding tax from the gross figure on each check. The full amount shall then be set aside for remittance to the Vacation Savings Plan.

Each Employer bound hereby irrevocably appoints as his representative on the Board of Trustees as are named in the Agreement and Declaration of Trust as Employer Trustees and their successors duly appointed as therein set forth, and agrees to be bound by all the terms and provisions of the Agreement and Declaration of Trust, Local 150 I.U.O.E. Vacation Savings Plan, and all amendments heretofore or hereafter made thereto, as though the same were fully incorporated herein.

Payments accompanied by monthly reports on forms provided for same are due in the Vacation Savings Plan Office, 6150 Joliet Road, Countryside, Illinois 60525, not later than the tenth (10th) day of the following month for the preceding month. Report forms are available at the above address. However, if payment is not in by the twentieth (20th) day of the month, it shall be considered a violation of this Agreement and the aforementioned Trust Agreement and shall be liable for contributions due, liquidated damages, interest, and any other cost of collections.

Additional information and Employer code numbers can be obtained by the Vacation Savings Office, at 6150 Joliet Road, Countryside, Illinois 60525.

71

non-qualified defined contribution plan, (b) shall only provide benefits for people who are, at the time of benefit payments, retired under the Midwest Operating Engineers Pension Fund and who had benefit payments, retired under the Midwest Operating Engineers Pension Fund and who had benefit payments reduced in prior years on account of Internal Revenue Code Section 415, and (c) that such Excess Plan benefits will be payable only when and to the extent determined by the Trustees of the Excess Benefit otherwise rendered moot by legislative action, and all benefit payments under the Midwest Operating Engineers Pension Fund that were previously reduced on account of Section 415 have been made up through the Excess Benefit Fund or otherwise, this paragraph shall have neither force nor effect. In such event, the remaining articles of this collective bargaining agreement shall be unaffected, and shall otherwise remain in full force and effect.

## SECTION 3 – VACATION FUND

Effective the 1st day of June, 2001, each Employer bound hereby shall pay ONE DOLLAR AND SIXTY CENTS ($1.60) per hour for each hour wages are received by an employee covered by this Agreement into the Local 150 I.U.O.E. Trusteed Vacation Savings Plan.

Effective the 1st day of June, 2002, each Employer bound hereby shall pay ONE DOLLAR AND SEVENTY CENTS ($1.70) per hour for each hour wages are received by an employee covered by this Agreement into the Local 150 I.U.O.E. Trusteed Vacation Savings Plan.

Effective the 1st day of June, 2003, each Employer bound hereby shall pay ONE DOLLAR AND EIGHTY CENTS ($1.80) per hour for each hour wages are received by an employee covered by this Agreement into the Local 150 I.U.O.E Trusteed Vacation Savings Plan.

70

## ARTICLE XVII
## APPRENTICESHIP AND SKILL IMPROVEMENT FUND

A Trusteed Apprenticeship and Skill Improvement Fund has been created and is known as the Operating Engineers Local 150 Apprenticeship Fund.

Effective June 1, 2001, the Employer shall pay FORTY-FIVE CENTS ($0.45) for each hour the employee receives wages under the terms of this Agreement into the afore-mentioned Apprenticeship Fund.

Effective June 1, 2002, the Employer shall pay FIFTY CENTS ($0.50) for each hour the employee receives wages under the terms of this Agreement into the aforementioned Apprenticeship Fund.

Effective June 1, 2003, the Employer shall pay FIFTY-FIVE CENTS ($0.55) for each hour the employee receives wages under the terms of this Agreement into the afore-mentioned Apprenticeship Fund.

Effective June 1, 2004, the Employer shall pay SIXTY CENTS ($0.60) for each hour the employee receives wages under the terms of this Agreement into the aforementioned Apprenticeship Fund.

Effective June 1, 2005, the Employer shall pay SIXTY-FIVE CENTS ($0.65) for each hour the employee receives wages under the terms of this Agreement into the afore-mentioned Apprenticeship Fund.

Effective June 1, 2006, the Employer shall pay SEV-ENTY CENTS ($0.70) for each hour the employee receives wages under the terms of this Agreement into the afore-mentioned Apprenticeship Fund.

It is understood and agreed that the Employer shall be bound by the terms and provisions of the Agreement and Declaration of Trust of the Apprenticeship Fund, and all

72

amendments heretofore or hereafter made hereto, as though the same were fully incorporated herein.

The Employer further agrees to be bound by the terms of the Apprenticeship Standards established by the Joint Apprenticeship Training Committee of the Northern Illinois and Northern Indiana Apprenticeship and Skill Improvement Program, as approved by the United States Department of Labor, Bureau of Apprenticeship Training.

The Apprenticeship Fund has been established and shall be administered in accordance with the Labor Management Relations Act of 1947, as amended, and all other applicable Federal and State Laws.

Contributions of the Employer together with report forms supplied for such purpose are due in the Apprenticeship Fund Office not later than the tenth (10th) day of the following month.

Contributions to the aforesaid Apprenticeship Fund shall not constitute or be deemed wages due to the employee.

The sole liability of the Employer to the Apprenticeship Fund shall be the payment of hourly contributions as set forth in this Article, provided, however, that nothing here-in shall be interpreted to release the Employer from its obligations under the Apprenticeship Standards as set forth above.

If payment for contributions as defined above is not received by the Fund Office by the twentieth (20th) day of the month, the Employer shall be deemed to be in violation of this Agreement and the aforementioned Trust Agreement and shall be liable for contributions due, liqui-dated damages, interest, and any other cost of collection.

73

## ARTICLE XVIII
## DUES CHECK OFF

Upon receipt of a written check off authorization form from an employee, the Employer agrees to deduct each week the applicable initiation fees and monthly dues uniformly required for obtaining and maintaining membership in the Union from the pay of each employee covered by this Agreement and shall remit the same to the Union, no later than the tenth (10th) day of each month, together with an itemized statement of such deductions. No deductions shall be made which are prohibited by applicable law. Payments accompanied by monthly reports on forms provided shall be submitted to the Midwest Operating Engineers Fringe Benefit Fund, 6150 Joliet Road, Countryside, Illinois 60525. Report forms are available at the above address.

However, if payment is not received by the twentieth (20th) day of the month, it shall be considered a violation of this Agreement, and the Union shall be entitled to all contributions due, liquidated damages, interest, and any other cost of collections.

It is the intention of the parties that such deductions shall comply with the requirements of the Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and that such deductions shall be made only pursuant to written assignments from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one (1) year, or beyond the termination date of this Agreement, whichever occurs sooner.

The Union agrees to indemnify and hold harmless the Employer, from any claim, suit, cause of action, or otherwise as regards a creation of the Dues Deduction, its administration or any act or action in connection therewith

74

and such indemnity and agreement to hold harmless shall include the payment of costs and attorneys' fees on behalf of the beneficiaries of such indemnity.

## ARTICLE XIX
## INDUSTRY ADVANCEMENT FUND AND CONSTRUCTION INDUSTRY RESEARCH AND SERVICE TRUST FUND

Effective June 1, 2001, the Employer shall pay EIGHTEEN CENTS ($0.18) per hour for each hour for which employees and supervisors receive wages under the terms of this Agreement into the Construction Industry Research and Service Trust Fund ("CRF").

Contributions of the Employer shall be forwarded to CRF in care of the Midwest Operating Engineers Fringe Benefit Funds, 6150 Joliet Road, Countryside, Illinois 60525 ("MOE"), together with report forms supplied for such purposes not later than the tenth (10th) day of the following month. It is understood and agreed that MOE will administer the collection and distribution of the CRF contributions and will receive a reasonable fee for that service, subject to approval of the Trustees of the CRF. The contributions to the aforesaid Construction Industry Research and Service Trust Fund shall not constitute or be deemed wages due to the employee.

Of the CRF contributions, SEVEN CENTS ($0.07) per hour for each hour for which contributions are made will be distributed to the MARBA Industry Advancement Fund (MARBA), a not-for-profit corporation, and Excavators, Inc., a not-for profit corporation, to be divided with sixty percent (60%) to MARBA and forty percent (40%) to Excavators, Inc.; and ONE CENT ($0.01) per hour for each hour for which contributions are made will be distributed to the Construction Industry Service Corporation ("CISCO"), a not-for-profit corporation. The remaining

75

TEN CENTS ($0.10) per hour for each hour for which contributions are made will be distributed by the CRF Trustees in accordance with the power and authority granted to them in the applicable CRF Agreement and Declaration of Trust.

Anything herein contained to the contrary notwithstanding, there is specifically excluded from the purposes of the CRF and/or any of the entities to which it distributes contributions, the right to use any of its funds for lobbying in support of anti-labor legislation and/or to subsidize contractors during a period of work stoppage or strikes. MARBA, Excavators, Inc., CISCO and all other recipients of CRF funds shall report annually to the CRF, giving a complete review of their activities and the activities of any of their members, including a certified audit showing the CRF disbursements. The CRF shall report annually to Local 150, IUOE, giving a complete review of its activities and a certified audit showing the Fund disbursements. Said review and audit to be furnished no later than May 1st of each year.

It is understood and agreed that the Employer shall be bound by the terms and provisions of the Agreement and Declaration of Trust of the Construction Industry Research and Service Trust Fund, and all amendments heretofore or hereafter thereto, as though the same were fully incorporated herein.

If payment for contributions as defined above is not received by the Fund Office by the twentieth (20th) day of the month, the Employer shall be deemed to be in violation of this Agreement and the aforementioned Trust Agreement and shall be liable for contributions due, liquidated damages, interest and any other costs of collection.

The administration of this Fund shall be solely in the hands of the CRF and no Employer shall pay or deliver any

funds to any representative of his employees. The Fund and the Trustees thereof, agree to indemnify and hold harmless the Union, its officers, agents, representatives and members from any claim, suit, cause of action, or otherwise as regards a creation of the Fund, its administration or any act or action in connection therewith, and such indemnity and agreement to hold harmless shall include the payment of costs and attorneys' fees in behalf of the beneficiaries of such indemnity.

The Association agrees to indemnify and hold harmless the Union, its Officers, Agents, Representatives and Members from any claim, suit, cause of action, or otherwise as regards the collection and transmission of Industry Advancement Fund collections.

## ARTICLE XX

### SECTION 1 - PENALTY FOR FAILURE TO PAY PENSION AND/OR HEALTH AND WELFARE AND/OR VACATION CONTRIBUTIONS AND/OR DUES CHECK OFF

If any Employer upon forty-eight (48) hours written notice of default to the Employer fails to pay pension or health and welfare or vacation or dues check off contributions, the arbitration procedure herein provided for shall become inoperative and the Union shall be entitled to resort to all legal and economic remedies, including the right to strike and picket until such failure to pay has been corrected.

Disputes as to the effectiveness or validity of employee dues deduction authorizations shall not subject a contractor to any right to strike provided for in this Article. The Union must be advised specifically of any such dispute within forty-eight (48) hours of written notice.

Illinois Prevailing Wage Act, 820 ILCS & 130 seq., are repealed or substantially modified in a manner which adversely affects the ability of signatory Employers to compete for State or Federal work, the parties to this Agreement agree to immediately reopen the Agreement and negotiate appropriate changes in terms and conditions of employment to maintain contractor competitiveness for such work. In the event no agreement is reached after sixty (60) days of the commencement of such negotiations, then either party may resort to self-help, including but not limited to strikes, lockouts and unilateral implementation.

## ARTICLE XXII
## SAVINGS CLAUSE

Any provision contained herein that is contrary to or held to be in violation of the Labor Management Relations Act of 1947, or any federal or state law now in force or hereafter enacted, or hereafter becoming effective shall be void and of no force or effect, and this contract shall be construed as if said provision herein were not a part hereof, it being intended, however, that the other provisions of this contract shall not be affected thereby.

It is further agreed that should compliance with any federal or state law, order or amendment thereof, or any order or regulation issued thereunder, now or hereafter in force and effect prohibit the carrying out of any of the provisions of this Agreement, then to the extent of such deviation or prohibition, this Agreement shall be deemed to have been automatically amended, effective on the effective date of such law, order or regulation.

Such amendment to this contract shall remain in effect only so long as said law, amendment, order or regulation continues in force, or until the expiration of this Agreement, whichever event shall first occur.

79

---

## SECTION 2 - PENALTY FOR FAILURE TO PAY WAGES

If any Employer fails to pay wages, the arbitration procedure herein provided for shall become inoperative and the Union shall be entitled to resort to all legal and economic remedies, including the right to strike and picket until such failure to pay has been corrected including penalties set out in Article XVI herein.

This clause shall be inoperative if the amount of wages is bonafidely disputed. In such instance, the Employer shall then pay the wages admitted to be due and the balance shall be settled by the arbitration procedure as provided herein.

## SECTION 3 - BONDING OF EMPLOYER

The Union, may at its discretion, demand a payment bond of any Employer guaranteeing payment of all earnings, vacation savings, welfare and pension benefit contributions which may become due.

## SECTION 4 - LEGITIMATE PICKET LINE

It shall not be a violation of this Agreement and it shall not be cause for discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a legitimate labor dispute or refuses to go through or work behind any picket line, including the picket line of the Union party to this Agreement and including picket lines at the Employer's place or places of business. Furthermore, an employee may refuse to cross any picket line when he fears that bodily harm may be done to him.

## ARTICLE XXI
## CONTRACT REOPENER

In the event that the provisions of the Davis-Bacon Act, 40 U.S.C. & 276(a) and/or the provisions of the State of

78

IN WITNESS WHEREOF, the parties have executed this Agreement this 30th day of August, 2001.

REPRESENTING THE:
MID-AMERICA REGIONAL
BARGAINING ASSOCIATION
on behalf of its members:

MARBA
2720 River Road
Room 222
Des Plaines, IL 60018
847-699-1283

REPRESENTING THE:
INTERNATIONAL UNION
OF
OPERATING ENGINEERS,
LOCAL 150, AFL-CIO

REPRESENTING THE:
EXCAVATORS, INC.

EXCAVATORS, INC.
8603 Pyott
Lake In The Hills, IL 60102
815-356-6547
815-356-6548 Fax

81

## ARTICLE XXIII
## ENTIRE AGREEMENT OF THE PARTIES

This represents the entire Agreement of the parties, it being understood that there is no other agreement or understanding, either oral or written. The Employer understands that the Union is a fraternal society and as such, and in keeping with the provisions of the Labor Management Relations Act of 1947, as amended has the right to prescribe its own rules and regulations with respect to the acquisition or retention of membership in the Union or with respect to any other matters for its own use. However, such rules or regulations whether contained in a by-laws, constitution or otherwise shall have no effect directly or indirectly upon this collective bargaining agreement, any employment relationship or the relationship between the parties.

EFFECTIVE DATE - this Agreement shall become effective the 1st day of June, 2001, except as otherwise provided herein and remain in full force and effect until the 31st day of May, 2007, and shall thereafter continue from year to year, unless at least sixty (60) days prior to the expiration date, or as thereafter extended, either party hereto shall notify the other in writing of its intention to terminate. It is contemplated that the parties will, in said sixty (60) days period meet with each other to negotiate a new agreement.

80

## MEMORANDUM OF CLARIFICATION regarding Application of Illinois Building/Heavy and Highway and Underground Agreements of Local 150 I.U.O.E. which expire on June 30, 1981 in their application to:

### SEWAGE PLANTS

This memorandum based on a site visit to the Aurora Sewage Plant, Montgomery, Illinois (See minutes Case No. 79-17 and Joint Grievance Committee Minutes, January 4, 1980,) (A.J. Lowe Co. vs. Local 150 I.U.O.E.) is effective July 15, 1980.

1. All sewer and watermain pipe outside of structure wall or building wall to be installed under the Heavy and Highway and Underground Agreement.

2. All sewer and watermain pipe inside a structure wall or building wall to be installed under the Illinois Building Agreement.

3. All air feed pipe and chemical feed pipe, even though installed underground, shall be installed under the Illinois Building Agreement.

MID-AMERICA REGIONAL BARGAINING ASSOCIATION

I.U.O.E. LOCAL UNION 150

83

---

## Illustrations and Definition of Piggybacking and Staging of Electric Submersible Pumps as applied in the Heavy and Highway and Building Agreement

Electric Submersible pumps may be physically connected to each other (piggyback) without causing any increase in discharge as calculated under this section.

Discharge of Electric Submersible pumps which are not piggy-backed but which are physically connected by hose, pipe, etc. or are otherwise staged shall be calculated separately and totaled in calculating total discharge under this section. (See illustration)



PIGGYBACK
STAGING

REPRESENTING THE:
MID-AMERICA REGIONAL
BARGAINING ASSOCIATION

REPRESENTING THE:
I.U.O.E.
LOCAL UNION 150

82

The Union and the Association together shall create a competition committee.

This Committee shall consist of an equal number of members representing the Employer and Union with no less than three (3) persons from each group. The Union and/or Association may appoint alternate members.

The purpose of this committee shall be to consider and implement under appropriate circumstance and based on adequate economic justification modification of this Agreement to apply to specific projects and/or geographic areas to assure continue work opportunities for employees working under this Agreement.

FOR THE ASSOCIATION    FOR THE UNION



84

# WORK CONTINUATION PROGRAM

In an effort to maintain a positive labor relations environment and a competitive union construction market in the Metropolitan Chicago Area, the contractor members represented by Mid-America Regional Bargaining Association (MARBA), their collective bargaining representative, and International Union of Operating Engineers Local 150 now agree as follows:

1. The parties agree to exchange contract proposals at least 90 days prior to the expiration date of the contract.

2. The parties agree to meet on a regular basis (to be determined) at least 30 days before expiration.

3. After the expiration date, and for 30 days following, the parties will meet Mondays, Wednesdays and Fridays for a designated period of time (to be determined) until an agreement is reached.

4. Any time after the expiration date an agreement is reached, it shall be retroactive back to the day after expiration.

5. If after 30 days from expiration no agreement is reached, the Union retains the right to strike.

FOR THE ASSOCIATION    FOR THE UNION

85

# LETTER OF UNDERSTANDING BETWEEN I.U.O.E. LOCAL 150 AND

## MID-AMERICA BARGAINING ASSOCIATION PERTAINING TO THE

### HEAVY & HIGHWAY & UNDERGROUND AGREEMENT,

### DISTRICTS 1, 2 & 3

### DATED JUNE 1, 1987

Based on Article VIII, Section 1 where it says, "in the event a dispute arises over the applicability of preparation time, or oiler (Apprentice) requirements, due to the introduction of new models of machines or due to the manufacturer's or employer's de-rating or re-classification of any machine's size, lifting capacity, bucket capacity, or weight, a committee comprised of an equal number of representatives of the Union and the Association signatory hereto shall meet to make an equitable decision of the machine in question."

A dispute has arisen on a mining machine as to whether it is 5 ft. or over (Article VII, Section 10). The dispute is where to measure the machine to arrive at its proper size. After examining two like machines and arriving at two different diameters it was determined by the committee that the diameter of the shield should be the determining factor since it is the only part of the machine that the measurement remains constant.

FOR THE ASSOCIATION    FOR THE UNION

Dated:    Dated: 8-30-01

86

# MID-AMERICA REGIONAL BARGAINING ASSOCIATION

## LABOR MANAGEMENT COMMITTEE

### TRENCHING MACHINES

A question has been raised by an Employer as to the intent of the word "trenching" as listed in Article XV "Classifications" of the Heavy and Highway and Underground Agreement, Districts 1, 2 and 3, dated June 1, 1987.

The Employer feels the intent of this classification in Class I was for large wheel type trenching machines and does not include small chain type trenchers. The Employer asks that under Article I, Section 2 Unlisted Equipment that chain type trenching machines be listed in Class IV.

After pictures and manufacturers brochures were reviewed by the Committee, the Committee by majority vote determined that chain type trenching machines, 12" and under, when used digging trenches for installation of telephone cable, TV cable, electric cable and natural gas services from the distribution line to the residence shall be included in Class IV.

FOR:
MID-AMERICA REGIONAL BARGAINING ASSOCIATION

FOR:
INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 150, AFL-CIO

87

## AWARD

After careful study of the record in its entirety, including all of the evidence and argument presented by both parties, the Arbitrator renders the following Award:

The Employer did not violate Article III, Section 1, Subsection (c) "LUNCH PERIOD" of the Heavy, Highway and Underground Agreement when, on its Illinois Toll road job site, it operated a second shift utilizing some, but not all, machines utilized on the first shift and paid a one-half hour lunch period only to those first-shift employees whose machines were also actually operated on the second shift, rather than pay all first-shift employees a one-half hour lunch period.

The grievance is denied.

Signed by me at Milwaukee, Wisconsin, this 23rd day of January, 1989.

Steven Briggs

The above decision by Steven Briggs of the American Arbitration Association is the result of a May 24, 1989, meeting of the M.A.R.B.A. Labor Management Committee. At this meeting, the Committee was unable to reach, a majority decision and submitted the dispute to arbitration.

89

---

## LETTER OF UNDERSTANDING
### BETWEEN I.U.O.E. LOCAL 150 AND MID-AMERICA REGIONAL BARGAINING ASSOCIATION

### PERTAINING TO THE
### HEAVY & HIGHWAY & UNDERGROUND AGREEMENT
### DISTRICTS 1, 2 & 3
### DATED JUNE 1, 2001

A dispute has arisen over the interpretation of Article V, Section 2 wage payment specifically where it reads "payday shall be once each week on a specified day during work hours", also Article III, Section 4A payday for employees during show-up time period and 4B payday for employees who are not required to work during call off.

It is the finding of the Committee that payroll checks delivered by mail, or other means, or direct deposit, to the employee's place of residence, or financial institution on the prescribed payday is an acceptable means of wage payment.

FOR THE ASSOCIATION        FOR THE UNION

Dated:        Dated: 8-30-01

88

# JOINT LABOR-MANAGEMENT
# UNIFORM DRUG/ALCOHOL ABUSE PROGRAM

## I. POLICY STATEMENT

The parties recognize the problems created by drug and alcohol abuse and the need to develop prevention and treatment programs. COMPANY NAME, , and the signatory unions seek to protect people and property, and to provide a safe working environment. The purpose of the following program is to establish and maintain a drug free, alcohol free, safe, healthy work environment for all of its employees.

## II. DEFINITIONS

A. *Company Premises* - The term "Company Premises" as used in this policy include all property, facilities, land, buildings, structures, automobiles, trucks and other vehicles owned, leased or used by the company. Construction job sites for which the company has responsibility are included.

B. *Prohibited Items & Substances* - Prohibited substances include illegal drugs (including controlled substances, look alike drugs and designer drugs), alcoholic beverages, and drug paraphernalia in the possession or for being used by an employee on the job.

C. *Employee* - Individuals, who perform work for (COMPANY NAME), including, but not limited to, management, supervision, engineering, craft workers and clerical personnel.

D. *Accident* - Any event resulting in injury to a person or property to which an employee, or contractor/contractor's employee, contributed as a direct or indirect cause.

E. *Incident* - An event which has all the attributes of an accident, except no harm was caused to person or property.

90

Reasonable cause shall be ness, excessive absenteeism, and noticeable imbalance, incoher-

... to this policy and program have only the employees in mind, therefore, encourage any in a substance abuse problem to come forward voluntarily accept our assistance in dealing with the An employee assistance program will provide guid- and direction for you during your recovery period. If you volunteer for help, the company will make every reasonable effort to return you to work upon your recovery. The Company will also take action to assure that your illness is handled in a confidential manner.

## III. CONFIDENTIALITY

B. All actions taken under this policy and program will be confidential and disclosed only to those with a "need to know".

C. When a test is required, the specimen will be identified by a code number, not by name, to insure confidentiality of the donor. Each specimen container will be properly labeled and made tamper proof. The donor must witness this procedure.

D. Unless an initial positive result is confirmed as positive, it shall be deemed negative and reported by the laboratory as such.

E. The handling and transportation of each specimen will be properly documented through the strict chain of custody procedures.

## IV. RULES - DISCIPLINARY ACTIONS - GRIEVANCE PROCEDURES

1. RULES - All employees must report to work in a physical condition that will enable them to perform their jobs in a safe and efficient manner. Employees shall not:

91

attempt to accommodate your needs by making an appropriate re-assignment. However, if a re-assignment is not possible, you will be placed on temporary medical leave until released as fit for duty by the prescribing physician.

4. **GRIEVANCE** - All aspects of this policy and program shall be subject to the grievance procedure of the applicable collective bargaining agreement.

5. **DRUG/ALCOHOL TESTING** - The parties to this policy and program agree that under certain circumstances, the company will find it necessary to conduct drug and alcohol testing. While "random" testing is not necessary for the proper operation of this policy and program, it may be necessary to require testing under the following conditions:

a. A pre-employment drug and alcohol test may be administered to all applicants for employment;

b. A test may be administered in the event a supervisor has a reasonable cause to believe that the employee has reported to work under the influence, or is or has been under the influence while on the job; or has violated this drug policy. During the process of establishing reasonable cause for testing, the employee has the right to request his on-site representative to be present;

c. Testing may be required if an employee is involved in a workplace accident/incident or if there is a workplace injury;

d. Testing may be required as part of a follow-up to counseling or rehabilitation for substance abuse, for up to a one (1) year period;

Employees may also be tested on a voluntary basis.

Each employee will be required to sign a consent and chain of custody form, assuring proper documentation and

93

a. ...possess, dispense or receive prohibited substances on or at the job site; or

b. report to work with any measurable amount of prohibited substances in their systems.

2. **DISCIPLINE** - When the company has reasonable cause to believe an employee is under the influence of a prohibited substance, for reasons of safety, the employee may be suspended until test results are available. If no test results are received after three (3) working days, the employee, if available, shall be returned to work with back pay. If the test results prove negative, the employee shall be reinstated with back pay. In all other cases:

a. Applicants testing positive for drug use will not be hired.

b. Employees who have not voluntarily come forward, and who test positive for a drug use, will be terminated.

c. Employees who refuse to cooperate with testing procedures will be terminated.

d. Employees found in possession of drugs or drug paraphernalia will be terminated.

e. Employees found selling or distributing drugs will be terminated.

f. Employees found under the influence of alcohol while on duty, or while operating a company vehicle, will be subject to termination.

3. **PRESCRIPTION DRUGS** - Employees using a prescribed medication which may impair the performance of job duties, either mental or motor functions, must immediately inform their supervisor of such prescription drug use. For the safety of all employees, the company will consult with you and your physician to determine if a re-assignment of duties is necessary. The company will

92

accuracy if an employee refuses to sign a consent form authorizing the test, ongoing employment by the company will be terminated;

Drug testing will be conducted by an independent accredited laboratory (National Institute on Drug Abuse and/or College of American Pathology), and may consist of either blood or urine tests, or both as required. Blood tests will be utilized for post accident investigation only.

The company will bear the costs of all testing procedures.

## 6. REHABILITATION AND EMPLOYEE ASSISTANCE PROGRAM

Employees are encouraged to seek help for a drug or alcohol problem before it deteriorates into a disciplinary matter. If an employee voluntarily notifies supervision that he or she may have a substance abuse problem, the company will assist in locating a suitable employee assistance program for treatment, and will counsel the employee regarding medical benefits available under the company or union health and welfare/insurance program.

If treatment necessitates time away from work, the company shall provide for the employee an unpaid leave of absence for purposes of participation in an agreed upon treatment program. An employee who successfully completes a rehabilitation program shall be reinstated to his/her former employment status, if work for which he/she is qualified exists.

Employees returning to work after successfully completing the rehabilitation program will be subject to drug tests without prior notice for a period of one year. A positive test will then result in disciplinary action as previously outlined in this policy and program.

94

WILLIAM G. DUGAN
Business Manager

JAMES M. SWEENEY

STEVEN M. CISCO
Recording-Corresponding Secretary

JOSEPH WARD
Treasurer

RAYMOND CONNORS
Financial Secretary

Local 1-10 affiliated with the AFL-CIO and Building Trades Department

# EXHIBIT C

**INTERNATIONAL UNION OF OPERATING ENGINEERS**

LOCAL UNION NO. 150, 150B, 150A, 150C, 150RA, 150D, 150G, 150M

AFFILIATED WITH THE A.F.L.-C.I.O. AND BUILDING TRADES DEPARTMENT

*07-27*



**WILLIAM E. DUGAN**
PRESIDENT-BUSINESS MANAGER

(708) 482-8800 · FAX (708) 482-7186
6200 JOLIET ROAD
COUNTRYSIDE, IL 60525-3992

November 13, 2006

*Via Fax (630) 499-9402 and*
*CM 7005 1820 0001 6674 8393*

*Revised*

Mrs. Bonnie Coyne, President and
Mr. Dan T. Coyne, Co-Owner
Aces Environmental a/k/a Aces Environmental
Consulting Corp.

RE:   Aces Environmental a/k/a Aces Environmental Consulting Corp. - Violations of the
       MARBA Heavy and Highway and Underground Agreement
       Article XV, Section 1 – Wage Rates and Fringe Benefits (John Duczak)
       Union File No. 06-296

Dear Mrs. Coyne and Mr. Coyne:

We are advised that your company is in violation of various articles and sections, including but
not limited to those captioned above, of the MARBA Heavy and Highway and Underground
Agreement (Districts 1-2-3), to which your Company and this Union are parties by virtue of a
Memorandum of Agreement signed January 6, 2000.

We are further advised that the above-stated violations occurred on or about August 7, 2006
through October 14, 2006, on your construction sites, at various job locations in Illinois, within
Local 150's jurisdictional territory, where your company failed to pay the proper wages and
fringe benefits due. See attached Agent's Statement for further details, including damages owed
in the current aggregate amount of **$11, 331.26.**

In compliance with Step 1 of the Grievances and Arbitration clause of our Agreement, Article
XIII, Section 1, our Business Representative, Tom Ferrallo, spoke with both you via telephone,
but the grievance remains unresolved.  Therefore, in a further attempt to resolve this dispute, I
have designated James McNally, Assistant to the President, to meet with your designated
company officials at the Local Union office, 6200 Joliet Road, Countryside, Illinois 60525, on
Tuesday, February 6, 2007, at 9:15 a.m.  If the Company Officer cannot attend, please send a
representative.

Alternatively, you may mail your settlement checks to the attention of Steven M. Cisco at the
above address prior to the date of hearing in the full amounts as follows:

1.    **$5, 677.12 payable to John Duczak (less appropriate deductions); and**
2.    **$5,654.14  payable to Midwest Operating Engineers Fund**

RECEIVED
NOV 15 2006



INTERNATIONAL UNION OF OPERATING ENGINEE~~

Aces Environmental a/k/a Aces Environmental
Consulting Corp.
November 13, 2006
Union File No. 06-296
Page 2

It is in the best interest of your company to negotiate a settlement at the pre-grievance hearing. Many grievances are resolved at this meeting. If you do not attend the pre-grievance hearing or mail us your settlement checks prior to that date and this matter remains unresolved, it will be automatically scheduled for the next meeting of the Joint Grievance Committee.

This Union shall continue to hold your Company liable for all appropriate remedies, including but not limited to any back wages and fringe benefits lost by this and all affected members of the bargaining unit who would be working had you honored our Agreement.

Sincerely,
William E. Dugan
PRESIDENT-BUSINESS MANAGER

By:    Steven M. Cisco
        Recording-Corresponding Secretary

SMC/hca
Attachment

cc:    James McNally, Assistant to the President
        Dale D. Pierson, General Counsel
        Tom Ferrallo, Business Representative – Dist. 2
        Ron Selby, Jr., MOE Delinquency
        Mid-America Regional Bargaining Association

## INTERNATIONAL UNION OF OPERATING ENGINEERS

LOCAL UNION NO. 150, 150B, 150A, 150C, 150RA, 150D, 150G, 150M

AFFILIATED WITH THE A.F.L.-C.I.O. AND BUILDING TRADES DEPARTMENT

**WILLIAM E. DUGAN**
PRESIDENT-BUSINESS MANAGER



(708) 482-8800 · FAX (708) 482-7186
6200 JOLIET ROAD
COUNTRYSIDE, IL 60525-3992

---

### STATEMENT OF BUSINESS AGENT

**TO:**   Steven M. Cisco
Recording-Corresponding Secretary

**RE:**   Aces Environmental a/k/a Aces Environmental Consulting Corp. - Violations of Article XV, Section 1 – Wage Rates and Fringe Benefits of the MARBA Heavy and Highway and Underground Agreement (John Duczak)

On September 15, 2006 I met with Dan Coyne at his office in Eola, Rick Dunlap was also present. During the meeting, the issue of wages for Mr. Duczak was discussed. The company was paying Mr. Duczak $20.30 per hour while on permit for a Skidsteer Loader which should be paid at $34.55 per hour. Mr. Coyne agreed to rectify the difference in pay for all hours worked back to the date of dispatch. As of October 14, 2006, Mr. Duczak was still paid at the rate of $20.30 per hour.

**Violation Dates:**    August 7, 2006 through October 14, 2006

**Relief Sought:**    Wages and fringe benefits for *Skidsteer Loader Class V*

| | | | |
|---|---|---|---|
| Wages | $14.25 x 317 Hours = | $4,517.25 | |
| Overtime (1½) | $21.38 x 54.25 Hours = | $1,159.87 | |
| | **Total:** | $5,677.12 | **To John Duczak** |
| Fringe Benefits Regular Pay | $15.23 x 317 Hours = | $4,827.91 | **To Be Paid To Midwest Operating Engineers Fund** |
| Fringe Benefits O.T. | $15.23 x 54.25 Hours = | $ 826.23 | |
| | **Total:** | $5,654.14 | |
| | **Total Wages and Fringes Due:** | $11,331.26 | |

Tom Ferrallo, Business Representative – Dist. 2
April 27, 2006
File No. 06-296

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO           2977
CONNECTION TEL             16304999402
SUBADDRESS
CONNECTION ID
ST. TIME           11/13 16:42
USAGE T            01'32
PGS. SENT          3
RESULT             OK
```

# INTERNATIONAL UNION OF OPERATING ENGINEERS
### LOCAL UNION NO. 150, 150B, 150A, 150C, 150RA, 150D, 150G, 150M
##### AFFILIATED WITH THE A.F.L.-C.I.O. AND BUILDING TRADES DEPARTMENT

**WILLIAM E. DUGAN**
PRESIDENT-BUSINESS MANAGER



(708) 482-8800 · FAX (708) 482-7186
6200 JOLIET ROAD
COUNTRYSIDE, IL 60525-3992

November 13, 2006

*Via Fax (630) 499-9402 and*                                      *Revised*
*CM 7005 1820 0001 6674 8393*

Mrs. Bonnie Coyne, President and
Mr. Dan T. Coyne, Co-Owner
Aces Environmental a/k/a Aces Environmental
Consulting Corp.

RE:   Aces Environmental a/k/a Aces Environmental Consulting Corp. – Violations of the
      MARBA Heavy and Highway and Underground Agreement
      Article XV, Section 1 – Wage Rates and Fringe Benefits (John Duczak)
      Union File No. 06-296

Dear Mrs. Coyne and Mr. Coyne:

We are advised that your company is in violation of various articles and sections, including but
not limited to those captioned above, of the MARBA Heavy and Highway and Underground
Agreement (Districts 1-2-3), to which your Company and this Union are parties by virtue of a
Memorandum of Agreement signed January 6, 2000.

We are further advised that the above-stated violations occurred on or about August 7, 2006
through October 14, 2006, on your construction sites, at various job locations in Illinois, within
Local 150's jurisdictional territory, where your company failed to pay the proper wages and
fringe benefits due. See attached Agent's Statement for further details, including damages owed
in the current aggregate amount of **$11,331.26.**

In compliance with Step 1 of the Grievances and Arbitration clause of our Agreement, Article

**EXHIBIT D**

JOINT GRIEVANCE COMMITTEE
OPERATING ENGINEERS, LOCAL 150

**CO-CHAIRMAN**
John Vignocchi/Joseph Benson
Mid-America Regional
  Bargaining Association
2720 River Road
Suite 222
Des Plaines, Illinois  60018
Telephone: (847)  699-1283

**CO-CHAIRMAN**
William E. Dugan
President-Business Manager
Local 150, International Union
  of Operating Engineers
6200 Joliet Road
Countryside, Illinois  60525
Telephone: (708)  482-8800

## VIA CERTIFIED & REGULAR MAIL

April 25, 2007

Mrs. Bonnie Coyne
Aces Environmental
31 W 780 Poss Road
Eola, IL  60519

Mr. Tom Ferrallo
Operating Engineers Local 150
1050 E. Frontage Road
Joliet, IL  60431

SUBJECT:    **Grievance No. 07-27**
            **Union File No. 06-296**

Gentlemen:

A hearing of the above grievance will be held at the offices of the **Mid-America Regional
Bargaining Association, 2720 River Road, Suite 222, Des Plaines, Illinois**, at the time and date
indicated below:

**DATE:  Wednesday, May 9, 2007**

**TIME:  9:30 A. M.**

Please note that the Committee may, by majority vote, reach a binding decision and may act in the
absence of either party.  The proceedings assure an opportunity to present matters in your behalf,
including any documented evidence, records, witnesses, etc., and to rebut testimony of the Grievant
or his Representative.

Please address questions to the undersigned at the Des Plaines Avenue address and telephone shown.
The telephone number of the MARBA office is (847) 699-1283 should you wish to contact the Joint
Committee during hearing hours.

Sincerely,

*Carol Lord*

Carol A. Lord
Committee Secretary

cc:    Co-Chairmen
       Heidi Adams

**CERTIFIED MAIL** #7004 1350 0003 1638 6656

**EXHIBIT E**

**JOINT GRIEVANCE COMMITTEE**
**OPERATING ENGINEERS, LOCAL 150**

**CO-CHAIRMEN**
John Vignocchi/Joseph Benson
Mid-America Regional
 Bargaining Association
2720 River Road
Suite 222
Des Plaines, Illinois 60018
Telephone: (847) 699-1283

**CO-CHAIRMAN**
William E. Dugan
President & Business Manager
Local 150, International Union
 of Operating Engineers
6200 Joliet Road
Countryside, Illinois 60525
Telephone: (708) 482-8800

May 9, 2007

Mrs. Bonnie Coyne
Aces Environmental
31 W 780 Poss Road
Eola, IL 60519

Mr. Tom Ferrallo
Operating Engineers Local 150
1050 E. Frontage Road
Joliet, IL 60431

**SUBJECT: Grievance No. 07-27**
            **Union File No. 06-296**

Gentlemen:

This is to confirm the decision of the Joint Committee in the above case as announced following a hearing on May 9, 2007, at the offices of the Mid-America Regional Bargaining Association, 2720 River Road, Suite 222, Des Plaines, Illinois:

Based on the testimony heard, the Committee by majority decision determined as follows:

1) The Employer shall pay to John Duczak the sum of
$5,677.12 in payment of wages.
2) The check should be sent to Steven Cisco, Local 150
for distribution.

Your attention is directed to Article XIII, Section 1 of the Heavy and Highway and Underground Construction Agreement which provides in part that: "Decisions of the Joint Grievance Committee and Arbitration Awards shall be complied with within seven (7) days of receipt of the decision by the losing party. A party which fails to comply within the seven (7) day period shall be required to pay an additional ten percent (10%) of all amounts owed as liquidated damages for failure to comply with the decision or award. In the event the prevailing party is required to file suit to enforce the decision or award, and it prevails, it shall be entitled to recover its costs, including attorney's fees, from the losing party."

Sincerely,

*Carol A. Lord*

Carol A. Lord
Committee Secretary

cc:    Co-Chairmen
       Heidi Adams

## JOINT GRIEVANCE COMMITTEE
## OPERATING ENGINEERS, LOCAL 150

**CO-CHAIRMAN**
John Vignocchi/Joseph Benson
Mid-America Regional
  Bargaining Association
2720 River Road
Suite 222
Des Plaines, Illinois  60018

TELEPHONE: (847) 699-1283

**CO-CHAIRMAN**
William E. Dugan
President & Business Manager
Local 150, International Union
  of Operating Engineers
6200 Joliet Road
Countryside, Illinois  60525

TELEPHONE: (708) 482-8800

Date: _5-9-07_

Grievance No.: _07-27_

### DECISION

Based on the testimony heard, the Committee _by majority decision determined as follows: The Employer shall pay to John Duczak the sum of $5,677.12 in payment of wages._

APPROVED:

_____
MANAGEMENT CHAIRMAN

_____
UNION CHAIRMAN